NORVAL DIXON, for the use of JOHN BRODRICK,

v.

JOHN NICCOLLS et al.

1. RENT—*whether it passes on a conveyance of the land, and of severing the rent from the reversion.* A party selling leased or rented land may reserve the rent; so he may sell the rent, retaining the reversion. But if he makes no reservation of the rent and conveys the fee, the accruing rent goes to the grantee of the fee.

2. If, however, the relation of landlord and tenant does not exist between the owner of the land and the person who cultivates, but they are mere tenants in common in the products of the land, the interest of the owner of the land in such products does not pass to his grantee, although he makes an unqualified grant of the land out of which they arise.

3. SAME—*whether rent goes to the heir or to the administrator.* Rent accruing out of land upon a lease granted by the owner in fee, and which does not become due till after the death of the lessor, is a chattel real, which descends to the heir as a part of the inheritance, and does not go to the executor or administrator.

4. SAME—*when rent becomes due.* When there is no special custom shown as to the time when rent becomes due, nor any contract about the time, on general principles, the rent will not be due until the expiration of the term.

5. In this case the tenant rented the land for the year commencing March 1, 1864, and ending March 1, 1865, the rent to be one-third of the crops, payable in kind; the small grain rent, wheat, oats and barley, to be delivered to the landlord in the half bushel at the threshing-machine, as soon as threshed. Under the rule above laid down, the rent was regarded as not being due until the 1st day of March, 1865.

6. LANDLORD AND TENANT—*where the relation exists—or, whether the parties are tenants in common of the crop.* The relation of landlord and tenant may exist, although the rent is to be paid by a portion of the crop, in which case the parties are not tenants in common of the crop raised.

7. But in all cases, whether it is simply raising a crop on joint account or a tenancy, the rent payable in kind, depends upon the intention of the parties. See *Blue* v. *Leathers,* 15 Ill. 31. In this case the tenant rented for a year, the rent to be one-third of the crop payable in kind, the small grain rent, wheat, oats and barley, to be delivered to the landlord in the half bushel at the threshing machine, as soon as threshed. The exclusive possession of the farm in the tenant, for a series of years previously, a rent agreed upon, and the non-residence of the owner, it was held, all conspired to show the relation of landlord and tenant, and not a tenancy in common in the crop.

8. RENT PAYABLE IN KIND—*ownership of the crop.* Where rent is reserved, payable in a part of the crop to be raised on the land, the tenant remains the exclusive owner of the crop until the stipulated rent is set off to the landlord.

9. JUDICIAL NOTICE. Of facts of unvarying occurrence, courts must take judicial notice, but not of the vicissitudes of climate or of the seasons.

10. So courts will not take judicial notice of the time when crops of wheat, oats and barley mature, because the time for those crops to mature varies greatly in the different parts of the State, and even in the same locality there is a difference.

WRIT OF ERROR to the Circuit Court of McLean county; the Hon. JOHN M. SCOTT, Judge, presiding.

The case is fully stated in the opinion of the Court.

Mr. W. H. HANNA, for the plaintiff in error.

This was a suit on a replevin bond. A plea of *nil debet* was filed and an agreement entered into that all matters that could be properly pleaded should be given in evidence under that plea. The case was submitted to the court for trial, and all the evidence in the case was the agreed state of facts set out in the bill of exceptions. The court found the issue for the plaintiff, but assessed the damages only at one cent. This is the error complained of. The plaintiff in error claims that the damages should have been assessed at the full value of the property replevied—that is, $850.

The agreed state of facts show that one John H. Knoop rented to John Brodrick for the rent year commencing March 1, 1864, certain lands which he, Knoop, owned in fee in Mc-Lean county, Illinois. That Brodrick was to give Knoop for the rent of the land one-third of the crop, the small grain to be delivered to Knoop in the half bushel at the machine *as soon* as threshed. That Knoop sold the land to the defendant in error, John Niccolls, and conveyed the same to him by a warranty deed on the first day of October, 1864.

That at that time the whole crop of small grain was cut and stacked together on the land. That Niccolls demanded of Brodrick the share of the crop of small grain, one-third, that was going to Knoop; that Brodrick refused, and Niccolls

thereupon replevied it, and filed the bond sued on; that the replevin suit was decided against Niccolls, and that he refused to return the small grain to Brodrick, and that what he got was in fact Knoop's share, and was worth $850.

The question is, did the right to the small grain pass by the deed from Knoop to Niccolls? It was personal property at the time the deed was made; it was severed from the realty, and could not pass by the deed for that reason.

But it will be insisted that it was rent and was not due, and passed to Niccolls with the deed for that reason. The letting of land upon the shares is no lease of the land. If the agreement be for a division of the specific crops, the owner of the land and the occupant are to be regarded as tenants in common of the crop. See *Bradish* v. *Schenk*, 8 Johns. 151; *Putnam* v. *Wise*, 1 Hill, 234; *Moulton* v. *Robinson*, 7 Fost. 550, 557; *Daniels* v. *Brown*, 34 N. H. 454. It is not a lease of land but tenancy in common of the crops, where A let his farm to B for one year for a single crop, who was to sow certain lots with oats, others with wheat, and to give A one-third in the half bushel. These are not regarded in the light of *rent*, although it is called rent, for if so, the tenant would be the owner wholly of the crop till it was severed and divided, which is not the case. See *Casewll* v. *Districh*, 15 Wend. 379; *Foot* v. *Colvin*, 3 Johns. 216; *Bishop* v. *Doty*, 1 Vermont, 37; *Dinehart* v. *Wilson*, 15 Barb. 595; *Lewis* v. *Lyman*, 22 Pick. 437.

To give the tenant the title to the whole crop (when he rents land on shares) until it is divided, unless such was the express intention of the parties, would be the source of great difficulties. The tenant could sell the crop, and it would be liable for his debts.

If, then, the share of the crop that Knoop was to have was not, in a legal sense, rent, there is nothing in the assumption that it passed with the deed, as rent not due.

But I contend that if, in a legal sense, the share of the crop that Knoop was to have is to be regarded as rent, still, by the terms of the contract between Brodrick and Knoop, the rent was due at the time the deed was made, and, therefore, did

not pass with the deed to Niccolls. The agreement between Knoop and Brodrick was, that Brodrick was to deliver to Knoop the small grain (wheat, oats and barley) in the half bushel as soon as threshed. There was no time fixed when it should be threshed; therefore, the law would be that it should be threshed and delivered in a reasonable time. Courts will judicially take notice of whatever ought to be generally known within the limits of their jurisdiction. See 1 Greenl. Ev. p. 9. The courts will then judicially take notice of the time when the crops mature. Now, had a reasonable time elapsed for threshing this small grain between the maturing of the crop, which would be in July, and the first of October, when this deed was made? September is and was the proper time for threshing the grain. If Brodrick neglected to do so, it nevertheless became due.

There is a difference when the rent has become due and when it has not.

Mr. R. E. WILLIAMS and Mr. M. W. PACKARD, for the defendants in error.

1. That accruing rents pass from the vendor to the vendee by a conveyance of the fee, is certainly not an open or debatable question. *Crosby* v. *Loop*, 13 Ill. 625.

They go to the heir and not to the executor. *Green* v. *Massie*, 13 Ill. 363.

2. Knoop was the owner in fee of these premises and had been for several years. Knoop resided in Ohio. On the 1st of October, 1864, Knoop conveyed the premises in fee to John Niccolls, by a general warranty deed *without any reservation whatever.*

The deed contains full covenants of title, seisin and against incumbrances.

Brodrick was tenant of Knoop at the time of the conveyance for the year commencing March 1, 1864, and ending March 1, 1865; the rent, to be one-third of the crops payable in kind, to be delivered to the landlord in the half bushel at the threshing-machine as soon as threshed. Brodrick had

been the tenant of Knoop for several years previous to the conveyance of the premises by Knoop to Niccolls.

At the date of the conveyance to Niccolls, the grain was cut and all stacked together and not threshed.

The real question is, did Niccolls, by virtue of the deed, acquire the right to the rent, that portion of the grain that Knoop was to get as his rent for the premises? And this question is solved by saying whether this grain was rent, or were Knoop and Brodrick tenants in common of the crop.

This is not an open question in this court.

The agreed state of facts states that *Brodrick was tenant of Knoop of the premises,* the *rent* to be one-third of the crop. This settles the question that this grain was rent and passed to the vendee by the deed, it not yet being threshed and not being due until it was threshed. *Allwood* v. *Ruckman,* 21 Ill. 200, is conclusive of the case if we can understand it. The court say, on page 201 : " The law, however, is equally well settled that there may be a leasing of land from year to year, or for a single year, where the relation of landlord and tenant may exist, although the rent is to be paid by a portion of the crop, in which case the parties are *not* tenants in common of the crop raised, but the title to the whole is in the tenant until the rent stipulated is paid."

The court go on to say, that whether it is the one kind of contract or the other, that is a simple raising of a single crop, on joint account, or a tenancy, the rent payable in kind, as in most other contracts, depends upon the intention of the parties. And in general, the question of possession will govern the matter.

In this case, Brodrick, the tenant, was in exclusive possession and had been for years. Knoop lived in Ohio. This is all plainly stated in the agreed state of facts. Then Brodrick was the exclusive owner of the crop until the stipulated rent was set off to the landlord. We might refer the court, if any reference be needed, to *Stewart* v. *Doughty,* 9 Johns. 107 ; this is a well considered opinion by Chief Justice KENT, and is precisely in point. *Branard* v. *Burton,* 5 Vt. 97 ; *Woodruff* v. *Adams,* 5 Blackf. 317 ; *Jackson* v. *Brownell,* 1 Johns. 265 ; 4

Kent's Com. 95; *Haskins* v. *Rhodes*, 1 Gill & Johns. 266; *Hatchel* v. *Kimbrough*, 4 Jones' N. C. 163.

There may have been, and perhaps have been, different decisions by different courts upon this, as there have been upon most other questions that ever admitted of discussion. But we apprehend it will be found, at least among modern authorities, that these differences are more apparent than real, and mostly turn upon some peculiar circumstances of the case before the court, and are not in fact at war with the doctrine of this court, as held in *Allwood* v. *Ruckman*, 21 Ill. 200.

We will now take up the cases cited by counsel for plaintiffs in error, and see if the apparent difference cannot be reconciled. *Bradish* v. *Schenk*, 8 Johns. 151, is a case where the court decides that the owner of the land and the cropper were tenants in common. It seems that the tenant had not the exclusive possession of the premises. The report of the facts is very short. It only says that Curtis took the land of the plaintiffs and planted it in corn on shares. We presume from this that Curtis was a laborer for the plaintiffs and took a part of the crop for his wages. This seems from the case to be the facts. If so, it does not militate against the doctrine of this court. *Putnam* v. *Wise* seems to have been a kind of general partnership in farming, as the owner of the farm furnished sheep to be kept. The whole facts, indeed, show such a partnership. It was not the case of a tenant having exclusive possession, and a right to plant such crops as he pleased, rendering a portion as rent. *Moulton* v. *Robinson*, 7 Foster, 550, when examined, is also a case where there was stock furnished to be fed and the profits divided. So, also, *Daniels* v. *Brown*, is clearly another case of farming on partnership account and nothing more. *Caswell* v. *Districh*, 15 Wend. 378, the court say, " There is nothing which indicates that the stipulation for a portion of the crops was by way of rent, but the contrary."

In the case at bar it is expressly stated that the portion of the crop is to be paid as *rent*. In *Foot* v. *Colvin*, 3 Johns. 215, it clearly appears, from the statement of facts, that Litchfield, who raised the crop, was not in the exclusive possession of the

premises, and of course was not tenant in the broadest sense of that term. *Bishop* v. *Doty*, 1 Vt., is a clear case of farming on joint account. One party furnished the land and teams and one-half of the seed; the other did the labor. The crops were to be divided. There was here no tenancy and no rent, and the court well held they were tenants in common of the crops. This was a *quasi* partnership, and the court well held the products of the joint effort were joint property, and that the landlord was not a trespasser in putting all the grain into his barn, as this was but simply carrying out the direct terms of the original agreement. In *Dinehart* v. *Wilson*, 15 Barb., the owner of the land furnished one-half the seed, and this was a case of joint enterprise. *Lewis* v. *Lyman*, 22 Pick., is clearly a case of either a joint enterprise or a case where the tenant, as he is called, gets a part of the produce of the farm as wages. The court say, on page 443, " that the part of the produce which was granted by the plaintiffs was in the nature of wages for services, so that all the produce, except that part which was granted to the tenant, became and remained the property of the plaintiff." In this case the owner of the land furnished almost every thing, or, in other words, the tenant, as he is called, only furnished a small part, and was to get, as the court say, as wages for his labor, a part of the produce of the farm, and the relation of landlord and tenant did not exist. We have thus briefly reviewed all the authorities of the plaintiff in error, as if this were a new question in this court, and feel perfectly satisfied that, if it were an open question in this court, certainly the weight of authority is in favor of our view. The case of *Moulton* v. *Robinson*, 7 Foster, is perhaps the strongest case cited by plaintiff's counsel to sustain his view of the case, and if that be considered an authority against us, let us see the reason upon which the court base their opinion. They put it solely upon the ground of intention. They say the landlord relies upon the crops as a security for the rent, and if they are all to be deemed the property of the tenant until a division is made, they might be levied upon or attached by the creditors of the tenant, and thus defeat the landlord's

claim to his rent; and that they will not presume the land-
lord intended thus to jeopardize his interest by letting the
tenant be sole owner until partition. And this is the reasoning
of all the cases that assert the doctrine of a joint ownership in
the crops in a case of this kind. This reasoning is not appli-
cable in this State, because the legislature have abundantly
provided for the security of the landlord by giving him a lien
on all the crops grown upon the rented premises. See Purp.
Stat., vol. 1, p. 689, § 8.

This being the only reason for the rule, the reason failing in
this State, the rule itself must fail. Further, in this State, the
legislature, in extending the right to distrain to the end of six
months after the expiration of the tenancy, has expressly
included this class of cases by providing that "whether the
rent reserved be payable in money, in specified articles of
property, or in any part of the products of the demised prem-
ises, the landlord shall have the right to distrain, etc." See
Statutes of 1857, p. 44. This statute clearly shows that such
a contract as the one at bar is to be considered a leasing,
and that the relation of landlord and tenant arises from it, with
all its incidents, including the right of distress. As a matter
of fact, this is the most ordinary method of leasing land in this
State, and parties who have been renting for years, would be
astonished to learn that they were not tenants, did not own
their crops, could not bring trespass for invasion of their prem-
ises, or destruction of their crops, so that if they were *res integra*
with this court, it seems to us the court could not hesitate for
a moment to determine it in favor of the defendants in error.
But as we have said before, we do not regard it as an open
question for this court, but think it is fully determined by the
case of *Allwood* v. *Ruckman*, 21 Ill. 200.

As to the point that the rent was due, we have only to say,
that if more than a reasonable time for threshing the grain had
elapsed before the deed was made, it was for the plaintiffs to
have proved it. I suppose that the proper time for threshing
grain that is stacked, is not a matter that the court would
judicially take notice of. But if it should, we say that a

reasonable time had not elapsed on the 1st day of October. If farmers in this latitude get the harvest completed and grain stacked by that time they do well, and if the court will judicially take notice of the methods of farming, they will know that wheat, or any grain, after it is stacked, undergoes a sweat, and ought to stand in the stack from four to six weeks before it is threshed.

It might be added here, that rent is not due until the expiration of the term, unless by special contract or custom to the contrary, and the term did not end until March 1, 1865, and no contract or custom to show that it was due sooner was proved in this case. But, even if due in a reasonable time, they must show a demand and refusal after the lapse of a reasonable time, which is not shown; but this point is not seriously relied on by the plaintiff in error.

Mr. JUSTICE BREESE delivered the opinion of the Court:

This was an action of debt brought in the Circuit Court of McLean county by Norval Dixon, for the use of John Brodrick, against John Niccolls and William S. Niccolls, on a replevin bond.

The declaration is in the usual form, demanding twelve hundred dollars, the penalty of the bond, as the debt, and claiming damages to the amount of twelve hundred dollars. The breach was that the defendant did not prosecute his suit with effect, and did not return the property, although a return was awarded by the court.

To the declaration, the defendants pleaded *nil debet*, and an agreement was entered into that all matters that could be specially pleaded might be given in evidence under this plea.

The cause was submitted to the court for trial without a jury, on the following agreed state of facts:

That John H. Knoop, of Miami county, Ohio, was for several years before and up to and until the 1st day of October, 1864, the owner in fee, of the east half, and the north-west quarter, the east half of the south-west quarter, and the north-west

quarter of the south-west quarter of section 32, town 24, range 3, east of the 3d principal meridian.

That on the first day of October, 1864, Knoop conveyed the premises to the defendant, John Niccolls, by a general warranty deed, without any reservation, whatever, in the deed, which deed contained full covenants of title, seisin, and against incumbrances.

That when the premises were conveyed by Knoop to Niccolls, John Brodrick was the tenant of Knoop, upon a portion of the premises, for the rent year commencing March 1, 1864, and ending March 1, 1865, the rent to be one-third of the crop payable in kind, the small grain rent (wheat, oats and barley), to be delivered to the landlord in the half bushel at the threshing-machine as soon as threshed.

That Brodrick had been the tenant of Knoop upon the same premises for several years previous, and immediately preceding the time of their conveyance by Knoop to Niccolls.

That at the date of the conveyance by Knoop to Niccolls, the small grain to be paid as rent from Brodrick to his landlord, together with Brodrick's own portion of the crop, was cut and stacked together (being undivided) upon the premises, but was not yet threshed.

That about the 24th day of October, 1864, Brodrick commenced to thresh the small grain, and defendant, John Niccolls, sent his agent to demand or receive from Brodrick the rent portion (one-third) of the small grain, that his agent did make such demand, and Brodrick refused to give up the rent; and thereupon, on the 25th day of October, 1864, defendant Niccolls commenced his action of replevin against Brodrick for the rent portion of small grain in kind " to-wit, about 500 bushels of oats, 100 bushels of barley, and 300 bushels of wheat, being one-third of the small grain (to wit, the rent in kind, present season) raised by Brodrick upon section 32, town 24, range 3, east, in McLean county, Illinois," filed his affidavit, and sued out his writ of replevin, and executed a replevin bond to Norval Dixon, sheriff, with William S. Niccolls as security, in the penal sum of twelve hundred dollars, the bond being in the usual

form; that immediately upon the execution of the bond, defendant, John Niccolls, by his agent, went, with the sheriff and the writ, to Brodrick, and Brodrick did then and there deliver over to the sheriff, upon his demand, by virtue of the writ, his one-third, or the rent in kind of small grain, which was by the sheriff delivered over to the agent of the defendant, John Niccolls. That the rent portion of small grain so replevied was worth the sum of eight hundred and fifty dollars.

That upon the trial of the action of replevin, John Niccolls (plaintiff in the suit) dismissed his suit, and the merits of the suit were not passed upon or decided by the court; but judgment was rendered for costs, and a writ of *retorno* awarded as by the declaration is set forth.

That the present action of debt is brought upon the replevin bond above referred to, and that the property ordered to be returned by the writ of *retorno habendo*, in the action of replevin, is the same property delivered to the agent of John Niccolls, by the sheriff, as above set forth, and is the rent portion, in kind, of the small grain grown in the year 1864, by Brodrick upon a portion of the same premises conveyed by Knoop to Niccolls.

Defendants admit the execution of the bond, and that such proceedings were had by the court in the action of replevin as by the declaration is set forth; that plaintiff in replevin dismissed his suit; that the court rendered judgment for costs against plaintiff and ordered return of the property; that demand was made for return of the property upon said writ of *retorno*, but that the defendant, John Niccolls, refused to deliver up the property so ordered to be returned; and defendants admit all the material allegations in the plaintiff's declaration, except that an action had accrued, or that defendants are indebted to plaintiff; but set up the foregoing facts, which were not considered by the court in the action of replevin, as a complete defense to this action.

On these facts, the court found for the plaintiff twelve hundred dollars debt and one cent damages, and that the debt be discharged by the payment of these damages.

A motion for a new trial was duly entered and overruled, and a bill of exceptions signed, and the cause brought here by writ of error to reverse the judgment. The plaintiff in error assigns the following errors : That the court erred in assessing the plaintiff's damages at one cent only ; in not assessing his damages at eight hundred and fifty dollars, the full value of the property replevied ; in overruling the motion for a new trial.

The precise question presented by the record and the only one argued by counsel, the determination of which decides the case, is, to whom did the right to the small grain belong, on the sale by Knoop to Niccolls of the land on which it was grown ? The plaintiff in error contends that the grain, being cut and stacked, was severed from the realty, became personal property, and so remained at the time the deed was made, and, therefore, did not pass by the deed.

The defendants in error insist that it was accruing rent and passed to the vendee by the deed, as settled by this court in the case of *Crosby* v. *Loop*, 13 Ill. 625.

The proper solution of the question depends upon the relation subsisting between Brodrick and Knoop, the owner of the land, at the time he sold and conveyed it to Niccolls.

If the relation of landlord and tenant existed, then the rent followed the reversion. If Knoop and Brodrick were tenants in common of the crop, then it did not pass by the deed.

In the agreed state of the facts it is conceded (item 3) that when the premises were conveyed by Knoop, Brodrick was the tenant of Knoop upon a portion of the premises for the rent, the year commencing March 1, 1864, and ending March 1, 1865, the rent to be one-third of the crop payable in kind, the small grain rent, wheat, oats and barley, to be delivered to the landlord in the half bushel at the threshing-machine, as soon as threshed.

The facts agreed further show, that the grain had not been threshed when the deed was made. It was not due by the terms of the agreement until it was threshed and measured in the half bushel. When the deed was made this had not been done, consequently it was rent not then due.

It would seem, by the admission of plaintiff in error, that Brodrick was the tenant of Knoop at a stipulated rent, and was in the exclusive possession of the land, that he has given up his whole case. The law is well settled where a lessor makes an unqualified grant of leased land, the rent passes to the grantee as an incident of the reversion. By Knoop's deed to Niccolls, no reservation was made of any kind. A party selling leased or rented land, may reserve the rent, so he may sell the rent retaining the reversion. If he makes no reservation of rent and conveys the fee, the accruing rent goes to the grantee of the fee. This doctrine is fully recognized in the case of *Crosby* v. *Loop*, 13 Ill. 625, and it is not now open to question.

But the plaintiff in error contends that the facts show a mere letting of the land to Brodrick by Knoop on shares, thus making them tenants in common of the crop. A number of cases are referred to in support of this position. If the facts made such a case, there would be no need of authority to support it, but they do not. The fact is conceded that Brodrick was tenant of Knoop, and the "rent" was to be one-third of the crop ; that he had exclusive possession of the farm, and had for a number of years previous, Knoop residing in Ohio. The leasing was from March 1, 1864, to March 1, 1865. As was said by this court in *Allwood* v. *Ruckman*, 21 Ill. 200, there may be a leasing of land from year to year, or for a single year, when the relation of landlord and tenant may exist, although the rent is to be paid by a portion of the crop, in which case the parties are not tenants in common of the crop raised, but the title to the whole is in the tenant until the rent stipulated is paid.

But, in all cases, whether it is simply raising a crop on joint account or a tenancy, the rent payable in kind, depends upon the intention of the parties.

In this case there can be no misconception on that point. The exclusive possession of the farm for a series of years by Brodrick, a rent agreed upon, and the non-residence of Knoop, the owner, all conspire to show the relation of landlord and tenant, and thereby constituting Brodrick the exclusive owner

of the crop until the stipulated rent was set apart or paid to the landlord. It is not like any one of the cases cited by the plaintiff in error. In all of them facts are disclosed, going to show the intention that there should exist a joint ownership in the crop to be raised, and not a tenancy .at a stipulated rent. The plaintiff in error further contends if, in a legal sense, the share of the crop Knoop was to receive is to be regarded as rent, still, by the terms of the contract between him and Brodrick, the rent was due at the time the deed was made, and, therefore, did not pass by the deed to Niccolls. He argues that as, by the agreement, Brodrick was to deliver the small grain in the half bushel as soon as threshed, and as there was no time specified when it should be threshed, the law would hold that it should be threshed and delivered in a reasonable time, and he further insists that the court will judicially take notice of the time when such crops matured, on the principle that whatever ought to be generally known within the limits of its jurisdiction, of that the court will judicially take notice. We do not think the doctrine of judicial notice has been carried quite to the extent claimed by the plaintiff in error. It cannot be so extended, because the time for those crops of wheat, oats and barley to mature varies greatly in the different judicial divisions of this State. In the county where this cause was tried, and that in which this opinion is written, the time at which these crops mature is very different. Even in the same locality there is a difference. Of facts of unvarying occurrence, courts must take judicial notice, but not of the vicissitudes of climate or of the seasons. These, like other facts, if relied on as important, must be proved by the party seeking an advantage therefrom.

If the plaintiff relied on the fact that sufficient time had elapsed within which to thresh and measure the grain, he should have proved it. We believe opinions differ on the point. Some good farmers contend that small grain should not be stacked, but threshed from the shock, while others insist it should be stacked, and remain there a month or more before threshing, while others suppose the best economy is, to postpone that operation until the winter season, when farmers have the most

leisure. Brodrick was threshing the grain on the 24th of October, when Niccolls demanded his share of it, as rent, he having purchased the premises on the first day of that month. We cannot say the time chosen by Brodrick, to thresh the grain was not in a reasonable and proper time after the crop matured, not knowing when it did, in that latitude, in fact mature.

There is no special custom shown here when the rent was due, nor was there any contract about the time; consequently, on general principles, the rent was not due until the expiration of the term, and that was on the 1st of March, 1865, and before the expiration of the term, Knoop sold the land to Niccolls, without any reservation. Suppose instead of selling the land, Knoop had died, to whom would this rent have gone? Rent is a chattel real, and would have gone to the heirs, and not to the executor or administrator. *Crosby* v. *Loop, supra,* and *Green* v. *Massie,* 13 Ill. 363; *Foltz* v. *Prouse,* 17 id. 487. The proposition is too plain and too well settled by authority, for argument, that when leased land is sold without any reservation of rent, the rent attends the reversion or fee in every case, when the relation of landlord and tenant exists. And where the rent is to be paid in kind, the tenant remains the exclusive owner of the crop until the stipulated rent is set off to the landlord.

Among the number of cases referred to, in support of this position, by the counsel for the defendants in error, in addition to the case of *Crosby* v. *Loop,* decided by this court, is the case of *Stewart* v. *Doughty,* 9 Johns. 107, a case "on all fours" with this case, and well considered, in which the same doctrine is held. In fact, we can find no case in opposition to it.

As admitted by the defendants' counsel, the case of *Moulton* v. *Robinson,* 7 Foster, 550, cited by plaintiff, bears more strongly against the opinion we have expressed, than any other case we have been able to find; but, when the reason for the decision in that case is understood, it will be found to be inapplicable to the relation of landlord and tenant as it exists under our law. The court say, the landlord relies on the crops as a security for the rent, and if they are all to be deemed the prop-

erty of the tenant until a division is made, they might be taken for the debts of the tenant, and the landlord's claim defeated, and they would not presume that the landlord intended thus to jeopard his interest by suffering the tenant to be sole owner until a division. Here the case is put on the ground of intention, and that is the true ground, but the reasoning can have no application in this State, protected as landlords are by the statute giving them a lien on all the crops grown on the demised premises. Scates' Comp. 717. And as further protection to landlords, the right to distrain for the rent in arrear is extended six months after the expiration of the term, whether the rent be reserved in money, in specific articles of property, or in any part of the product of the demised premises. Scates' Comp. 718.

The relation of landlord and tenant being established, and the stipulated rent not due, from all that appears, until the 1st day of March, 1865, the sale of the premises by Knoop, on the 1st of October, 1864, without any reservation of the rent, passed the rent to Niccolls, his grantee.

The fact that this suit is brought for the use of Brodrick, for the share of his landlord, and which was all that Niccolls replevied, goes to show that he considered the grain his, otherwise the suit would have been brought for the use of Knoop. On the theory that he and Brodrick were tenants in common of the crop, and Brodrick had received his share, why should a suit for Knoop's share be brought for the use of Brodrick? This, as well argued by defendants' counsel, shows conclusively that Brodrick did not consider the crop as joint property, but that the whole of it belonged to him as the tenant who raised it, and as tenant he sues for it. The case of *Allwood* v. *Ruckman*, 21 Ill. 200, before cited, is conclusive on the point. The plaintiff in replevin having got, by means of the writ, that to which he was entitled, being the rent, and nothing more, had no motive to promote the replevin suit, and suffered a nonsuit. This suit is brought on the replevin bond, averring a non-return of the property. The merits of the case being now first disclosed, it is manifest the court decided right in giving

nominal damages only, and by the payment of which the debt would be discharged. We perceive no error in the record, and therefore affirm the judgment.

*Judgment affirmed.*