[Opinion delivered June 14, 1880.]

S. A. PACE v. T. P. SPARKS.

(Case No. 4034.)

1. LANDLORD AND TENANT—TRIAL OF THE RIGHT OF PROPERTY.—
Where a tenant's cotton has been levied on under execution, his landlord cannot recover under his lien for rent, in the statutory. proceeding of trial of right of property. While his lien is superior to all other creditors, it does not give him title to the property, but only the right to have it subjected to the payment of his debt. Perkins v. Sterne, 23 Tex., 532; Duty v. Graham, 12 Tex., 432; Buchanan v. Monroe, 22 Tex., 541; Wright v. Henderson, 12 Tex., 44; Blacks., book 2, p. 317; Acts 14th Leg., p. 55; Ewing v. Perry, 35 Tex., 778; Matthews v. Burke, 32 Tex., 432; Townsend v. Isenberger, 45 Ia., 670; Alwood v. Ruckman, 21 Ill., 200; Woodruff v. Adams, 5 Blackf., 318; Dixon v. Niccols, 39 Ill., 372; Cloud v. State, 53 Miss., 664; Westmoreland v. Wooten, 51 Miss., 825.

APPEAL from Navarro. Tried below before the Hon. D. M. Prendergast.

The facts are stated in the opinion.

*Beaton & Damon,* for appellant.

*Frost & Barry,* for appellee.

WALKER, P. J.— This was a case of trial of the right of property. S. A. Pace caused to be levied an execution, which was issued on his judgment ·for $85 and costs, against P. M. Halbrook, the judgment debtor, on two bales of cotton, as the property of Halbrook. T. P. Sparks made claim to it, filed the bond required by law, and took possession of the cotton. The issues on which the parties finally tried the case were these, viz.: The plaintiff, Pace, alleged that the cotton was the property of Halbrook, and subject to execution and the levy. The claimant claimed one-fourth of the cotton as his absolute property.

The evidence established that Sparks, who resides at Waco, had rented his farm in Navarro county, during the year 1879, to Halbrook, and was to receive as rent one-third of the corn and one-fourth of the cotton raised on the farm by said tenant. Halbrook resided on the farm with his family during said year; had complete management and control of the farm, and he hired hands to gather the crop. Sparks had a mortgage on the entire crop to secure a debt of $279.09, only $130 of which had been paid. The mortgage was duly registered before the levy. He gave Halbrook permission to sell enough of the mortgaged cotton to pay his hands for picking the crop. Halbrook brought the two bales in controversy to Corsicana, left them in the cotton yard of J. M. Scales, and gave him authority to sell them for him. Then plaintiff made the levy. Sparks admitted that if the cotton had been sold he would not have claimed it from the purchaser. The cotton was proved to be worth $106.36. The judgment of the court was, that the plaintiff recover three-fourths of the cotton, defendant one-fourth, and that plaintiff pay costs.

Hon. D. M. Prendergast, before whom the case was determined in the district court, on appeal, appends to the agreed statement of the case, the legal point which controlled his ·

judgment, as follows: "The cotton being prepared for market by the terms of the rent contract, the claimant, I took it, was entitled to the immediate possession of one-fourth of the amount, and was the absolute owner thereof. Upon this view of the case the judgment complained of was rendered." Pace appealed. The assignments of error present the question whether the rights of Pace as landlord and as mortgagee gave him absolute title to the cotton, or to any part of it.

In equity the mortgage is but an incident to the debt; and the mortgagee can never acquire an absolute title to the thing mortgaged, as against the mortgagor, without the aid of the court. Perkins v. Sterne, 23 Tex., 532; Duty v. Graham, 12 Tex., 432. It is but the security for the debt, and only a chattel interest. Buchanan v. Monroe, 22 Tex., 541; Wright v. Henderson, 12 Tex., 44. We presume that, no question was or can be made that Sparks acquired a right of property in and to the cotton by virtue of his mortgage. His rights as a landlord are given to him by the statute, in contracts for the lease of lands. The contract between Sparks and Halbrook was the renting of the farm of the former to the latter for the period of the year 1879, for which Sparks was to receive as rent one-third of the corn and one-fourth of the cotton raised on the farm. A lease cannot more accurately and clearly be indicated by the expressions used in the terms of a contract, than it is by the language employed in this contract.

"A lease is properly a conveyance of lands or tenements (usually in consideration of rent or other annual recompense), made for life, for years, or at will." Blacks., book 2, p. 317. "Rent is defined to be a certain profit issuing yearly out of lands and tenements corporeal." Id., p. 41.

The contract being a verbal lease, and which made no other stipulation than for the lease of the land for a year, on the one hand, and for the *payment* of the rent therefor in the produce raised upon it, on the other, whatever remedies or rights are given under it to the landlord are derived from the law which prescribes. the legal effect of

such a contract. It is enacted in the laws of the fourteenth legislature, "that all persons-leasing or renting lands or tenements, at will or for a term, shall have a preference lien upon the property of the tenant hereinafter indicated, upon such premises, for any rent that may become due and for all money, and the value of all animals, tools, provisions and supplies furnished by the landlord to the tenant to enable the tenant to make a crop on such premises, and to gather, secure, house and put the same in a condition for market; . . . and this lien shall apply only to . . . the crop raised on such rented premises; . . . and such preference lien shall continue as to, etc.; . . . and such lien as to agricultural products, etc., . . . shall be superior to all laws exempting such property from forced sales, provided that such lien shall not attach to the goods, wares and merchandise of a merchant, etc.; . . . and provided further, that the removal of agricultural products for the purpose of being prepared for market shall not be considered a waiver of such *lien*, but such *lien* shall continue and attach to the products so removed, the same as if they had remained on such rented premises." Acts 14th Leg., pp. 55 and 56.

Thus it is seen in this section of the act just quoted that the law gives to the landlord a lien as the security for his debt, but does not vest in him the property; other provisions of the law provide for its enforcement. He has no absolute right to the property — he has no title to it; it belongs to the tenant subject to the lien of the landlord. The landlord may even lose that lien. Ewing *v.* Perry, 35 Tex., 778; Matthews *v.* Burke, 32 Tex., 432.

"Where land is leased upon condition that a third of the crop shall be given to the owner in payment of rent, the owner acquires no title to the part of the crop reserved for rent until it is set apart to him by the tenant." Townsend *v.* Isenberger, 45 Iowa, 670. Citing Rees *v.* Baker, id.; Alwood *v.* Ruckman, 21 Ill., 200; Woodruff *v.* Adams, 5 Blackf., 318. The same proposition is distinctly decided in Dixon *v.* Niccols, 39 Ill., 372.

The contract in this case seems to be a contract of mere leasing for a stipulated rent payable in the products raised on the land. Our statute makes provision for a lien in favor of the landlord, where, in addition to the lease of the land, he has contributed otherwise to make the crop. Statutes similar in their general purport and objects exist likewise in other states, *e. g.*, in the state of Mississippi, where, in construing and determining the respective interests and rights under such contracts, in Cloud *v.* State, the court held that "The intendment is that it (the landlord's lien) shall have preference over other incumbrances on the products of the soil. But this lien for the creditor, who has contributed means to make the crop, must be enforced within six months after the debt became due, or it expires. The statute gives a special remedy. Detinue or replevin would not lie at the suit of the creditor, because he has no property in the products. His right is to have satisfaction out of the cotton. A lien is a privilege to pursue the thing, and subject it to the debt. It adheres to the thing, and the creditor may pursue it in the hands of a remote vendee, and his lien will be paramount to any title the debtor could transfer. But the purchaser does not thereby make himself personally liable to the creditor." Cloud *v.* State, 53 Miss., 664. A purchaser of cotton from a tenant was held not to be liable to the landlord for the value of the cotton, because the landlord had a lien for his rent. Westmoreland *v.* Wooten, 51 Miss., 825.

From an examination made of numerous cases decided in different states, we have seen no variation from the general principle laid down in the cases we have referred to, and to which many others to a like effect might be added. But there are cases which decide that where, by the terms of the contract between the parties, they each would have a right to the crop when it should mature or be gathered, that the relation of landlord and tenant would not necessarily exist, but that the parties to it may be tenants in common of the crop. Alwood *v.* Ruckman, 21 Ill., 201. It is needless in this case to be diverted to the examination or discussion of

this class of cases and contracts. The contract between the claimant and his tenant was not in any wise analogous to the contracts referred to; it was a lease — nothing more — of the land for a stipulated rent, and it is governed by the ordinary rule applicable to such contracts. The remedies furnished by the law to the landlord for his protection are as ample and various as are the just necessities which may invoke their application; we need not point them out; it is sufficient now to say that the right to claim possession and ownership of the produce raised by the tenant, unaided by the law decreeing it to him, is not one of those remedies.

The right of the appellee, Sparks, was one superior to that of all other creditors; but as against the levy of an execution in favor of a judgment creditor of Halbrook, if he sought to protect himself against apprehended loss, he cannot do so in this statutory proceeding of trial of the right of property, without being able to show that the property is not subject to execution at all, or else that it is not liable to the levy which the plaintiff has made upon the property. Having failed to show that he is the owner of any part of the cotton, and the plaintiff showing a right of property in Halbrook, it was error to render judgment in his favor for any portion of the cotton.

We conclude, therefore, that the judgment shall be reversed, and the cause remanded for further proceedings in accordance with the rules and principles applicable to the case as indicated in this opinion.

REVERSED AND REMANDED.