Hansen v. Dennison.

# CHARLOTTE HANSEN

## v.

# EDWARD DENNISON ET AL.

1.  CHATTEL MORTGAGE UPON GROWING CROPS.—A chattel mortgage made in February, 1879, of " the wheat and other crops now growing " on the lands designated, the wheat having been put into the ground the fall before, is valid.   The wheat, at the time of giving the mortgage, had a potential and substantial existence and was a proper subject of conveyance.

2.  TRIAL OF RIGHT OF PROPERTY—BURDEN OF PROOF.—In a trial of right of property it devolves on the claimant to show affirmatively that he is the owner, and it is error to refuse to instruct the jury that the burden of proof is imposed upon the claimant.

3.  FRAUDULENT CONVEYANCE.—If a conveyance of property is made with a fraudulent intent and object, it is not purged of the fraud because there may also have been some other purpose in view, such as the discharge of a debt due the grantee.

4.  RENTING FARM UPON SHARES—RELATION OF PARTIES—INTENTION. —When a farm is leased upon shares, the question whether the relation of land-

lord and tenant, or that of tenant in common of the crop, exists, is one of intention, to be gathered from the circumstances, and in ascertaining this intention the matter of possession by the lessor is of controlling importance.

5. OWNERSHIP OF CROPS—WHEN TITLE PASSES.—If the relation of landlord and tenant exists, the property in the crop is in the tenant until harvested, and the landlord's portion is set apart, and until division it cannot be levied upon as the property of the landlord; but if the parties are tenants in common of the crop, the landlord, before division, has such an interest as may be levied upon.

APPEAL from the Circuit Court of Jackson county; the Hon. D. M. BROWNING, Judge, presiding. Opinion filed August 13, 1880.

Mr. DANIEL H. BRUSH and Mr. JOHN B. MAYHAM, for appellant; that the mortgage, upon its face showed no title or interest as against the claims of judgment creditors, cited Rev. Stat. 1874, Chap. 95, §§ 1–4; Burnham v. Muller, 61 Ill. 453; Reed v. Eames, 19 Ill. 594.

A conveyance of property to place it beyond the reach of creditors, is fraudulent in law: Phelps v. Curts, 80 Ill. 109; Gill v. Crosby, 63 Ill. 190.

Clear and positive proof of fraudulent intent is not required: Gill v. Grosby, 63 Ill. 190; Reed v. Noxon, 48 Ill. 323; Annis v. Bonas, 86 Ill. 128; Tennison v. Chamblin, 88 Ill. 378.

The proof showed the mortgage was a fraud: Strohm v. Hayes, 70 Ill. 41; Bowden v. Bowden, 75 Ill. 143; Nesbitt v. Digby, 13 Ill. 387; Hayes v. Barnard, 38 Ill. 297; Boies v. Henney, 32 Ill. 130.

A levy could be made before the crop was divided: Rorer on Judicial sales, § 980; Creel v. Kirkham, 47 Ill. 344; James v. Stratton, 32 Ill. 202; White v. Jones, 38 Ill. 160.

As between vendor and vendee, growing crops unless reserved, pass to the purchaser: Talbott v. Hill, 68 Ill. 106; Powell v. Rich, 41 Ill. 466.

Messrs. BARR & LEMMA, Mr. W. H. WOODWARD, and Mr. W. J. ALLEN, for appellees; that where there is evidence from which the jury could properly find a verdict, it will not be dis-

turbed, cited C. B. & Q. R. R. Co. v. Gregory, 58 Ill. 272; Chicago City R'y Co. v. Young, 62 Ill. 238; C. B. & Q. R. R. Co. v. Van Patten, 64 Ill. 510; C. & R. I. R. R. Co. v. Hutchins, 34 Ill. 108.

No levy could be made until after the grain had been threshed: Alwood v. Ruckman, 21 Ill. 200; Dixon v. Niccolls 39 Ill. 372; Sargent v. Courrier, 66 Ill. 245.

BAKER, J.    Appellant recovered judgment, at the March term, 1879, of the Jackson Circuit Court, against Martin R. Dennison, on certain promissory notes, for $2,917.79. At the same term a mortgage securing said notes was foreclosed, and a decree entered for the sale of the mortgaged premises. On the 30th day of June following, the mortgaged land was sold by the master, and the proceeds thereof were applied to the payment of said indebtedness, leaving due and unpaid on the judgment the sum of $1,023.75. An execution had been issued on the judgment at law, and placed in the hands of the sheriff on the 3rd day of April, and on the 1st day of July, 1879, this execution was levied upon one hundred and thirty-five acres of wheat, in stacks and in shocks, and two mules and two horses, as the property of the defendant in the execution. All of this property was claimed by appellees, sons of said Martin R. Dennison, and they gave notice for a trial of the right of property. The controversy seems to be confined to the wheat, and a trial was had upon appeal, at the December term, 1879, of the circuit court, which resulted in a verdict and judgment adjudging the wheat in question to appellees. The claim of appellees appears to be based upon a certain chattel mortgage; and a further claim, the share of said Martin R. Dennison in said wheat, had not been set off to him at the time of the levy, and was not liable to execution until after it had been so set off. The evidence shows that Martin R. Dennison, in August, 1878, rented his farm, on which the wheat was raised, to appellees, for one year, on halves; he to furnish seed, teams and utensils; they to perform the labor, and the crops to be equally divided, the wheat to be measured out at the thresher; that he complied with his part of the

agreement, and they put in the wheat, and it was harvested
and part stacked and part in shocks, on the land where it
grew, at the time of the levy.

The promissory note for $1,207, made by Martin R.
Dennison to appellees, and the chattel mortgage executed by
him to them, both dated February 5, 1879, were properly ad-
mitted in evidence. The note was due one year after date, and
the stipulation in the mortgage was, " that if said Martin R.
Dennison shall, on or before the fifth day of February, 1879,
pay, or cause to be paid, to, etc., the sum of $1,207, together
with the interest that may accrue thereon, at the rate of eight
per cent. per annum, from the 5th day of February, 1879,
until paid, according to the tenor of one promissory note due
and payable one year after date to Edward Dennison and
James Dennison, or order, for the sum last aforesaid, with in-
terest at eight per cent. per annum from date; then, etc."

The identity of the note admitted in evidence with that de-
scribed in the mortgage, is evident from a consideration of the
whole of the stipulation quoted, its several clauses being taken
and construed together, and from a consideration of subse-
quent portions of the mortgage, such as the provision for the
retention of the property by the mortgagor until the day of
payment, the insecurity clause and other similar provisions.
It would be sheer nonsense to insert such provisions if the
mortgage debt fell due the very day the mortgage was exe-
cuted; and it would be preposterous to provide for the pay-
ment of interest at the rate of eight per cent. per annum
from the 5th day of February, 1879, to the 5th day of Febru-
ary, 1879. The object of the statute in regard to chattel
mortgages is to give notice to creditors and third parties, and
we think no one, as the result of an ingenuous examination
of this mortgage, would be misled as to the date of the ma-
turity of the note therein described.

As to the other point of objection made to the introduction
of the mortgage, that it was an attempt to create a lien upon
property not in existence at the time the mortgage was exe-
cuted, it is sufficient to say the evidence shows the wheat was
put in the ground in the fall of 1878, and the mortgage was

executed on the 5th day of February, 1879, and was upon "the undivided one-half of the wheat and other crops now growing" on the land designated. The wheat crop, at the latter date, not only had a potential but an actual and substantial existence, and was a proper subject of conveyance. The note and mortgage were properly in evidence, but, of course, liable to impeachment if fraudulent against creditors.

The evidence on this question of fraud we do not care to discuss, as such discussion is now unnecessary in the view we take of the case, and as that issue must be submitted to another jury.

Upon the trial, the Court refused to give the following instruction, asked by appellant: "The Court instructs you that the claimants of said property, in order to recover in this cause, must prove to the jury by a preponderance of evidence, that the property in question was and is the property of said claimants, James and Edward Dennison." In a trial of the right of property it devolves on the claimant to affirmatively show he is the owner. Marshall v. Cunningham, 13 Ill. 20; Craig v. Peak, 22 Ib. 185. Appellant had a right to have the jury instructed upon whom the burden of proof was imposed; and as that information was not afforded by any of the instructions given in the case, it was error to refuse this.

Every conveyance of property, real or personal, made for the purpose of delaying, hindering, or defrauding creditors, is by the statute of Frauds and Perjuries declared to be void as against such creditors. If a conveyance is made with such fraudulent intent and object, it is not purged of the fraud because there may also have been some other purpose in view, such as the discharge of a debt due the grantee. Murry v. Bostwick, 13 Ill. 409; Reed v. Noxon, 48 Ill. 323; Boies v. Henney, 32 Ib. 131. We think, then, the 5th instruction given for appellees was erroneous, and was calculated to mislead the jury, as it informed them that a debtor "may pay one creditor in full and pay the others nothing and the transaction would be upheld in law," wholly ignoring the circumstance that the very object of such transaction might be to delay and defraud others.

Assuming, for the sake of the argument, the mortgage to be fraudulent and void as to creditors, and that Martin R. Dennison was to have one half of the wheat crop, yet the evidence shows the wheat was to be delivered to him at the thresher, and the levy was made while the wheat was in the stack and in shocks.

Did he at that time have such interest and property in the wheat as could be levied upon? The solution of this question depends upon the relation existing between him and appellees. If the relation of landlord and tenant existed, then at the time of the levy the property in the wheat was all in appellees, and it could not be levied on as the property of their father. But, if appellees and their father were tenants in common of the crop, then the sheriff could make a levy and take possession of the property, and sell the interest of the father therein. It is a question of intention, and this intention must be gathered from the circumstances of the case, the matter of possession being of controlling importance. In Alwood v. Ruckman, 21 Ill. 200, it was said: "When the facts are doubtful as to whether the possession and control are absolute and exclusive in the tenant, or jointly in the owner of the land and the cultivator of the crop, the inclination will be and should always be in favor of the latter conclusion." In Creel v. Kirkham, 47 Ib. 344, it was said: "It has been held that if land be let upon shares, for a single crop only, that does not amount to a lease, and the possession remains in the owner. The occupant is, however, a tenant in common with the owner of the growing crop, and continues so until the tenancy be severed by division. But if the contract be that the lessee possess the land, with the usual privilege of exclusive enjoyment, it is the creation of a tenancy for a year, although the land be taken to be cultivated on the shares." And the court further there said: "This rule seems to recognize the true distinction between a tenancy for a term and a mere joint undertaking for the cultivation of a single crop on the shares." It is clear that in Dixon v. Niccolls, 39 Ill. 372, and Sargent v. Courrier, 66 Ib. 245, the tenant had exclusive possession.

On his cross-examination, Edward Dennison testified: "The

Hansen v. Dennison.

agreement was to last until the crops were made for that year, until the next August. Father remained on the farm; he owned the cows, sheep and other stock; he lived in town part of the time. Mother and youngest sister and brothers lived in town. Father made the farm his home." James Dennison testified among other things: " Father was to live on the farm, help oversee and do chores."

There is considerable other testimony, some of it even stronger than this, tending to show Martin R. Dennison did not give up to appellees the exclusive possession and control of the farm, and, as we have already seen, in February, 1879, he mortgaged to them an undivided one-half of the wheat; all parties to the transaction thereby recognizing a moiety of the · wheat as his property. In the 6th instruction given for appellees, the court said to the jury that when a party rents land to another and gives such others possession of such land, and is to receive, as rent, one-half the crop in the half bushel, that then the title belongs to him who has raised the crop until it is threshed and measured, and until this division is made the landlord's part is not subject to execution.

This instruction is not framed with reference to the circumstances of the case on trial, and is expressed in abstract and general terms calculated to mislead. It also assumes as matter of fact, possession of the land had been given to appellees, instead of submitting that question to the jury. The ninth instruction for appellees is also objectionable; it states a hypothetical case, but does not state it fairly; it is not based on the evidence, as there is no testimony to show appellees were given "entire possession and control of the farm." It assumes to give a summary of the principal facts bearing upon the issue as to the legal relationship existing between the owner of the land and the cultivators of the soil, but it directs attention only to those favorable to appellees, leaving wholly out of view other facts in proof of equal importance, having a contrary tendency.

If we exclude the circumstances of exclusive possession and control, a statement of which circumstance is not justified by the evidence, there is no fact stated in the hypothetical case that is of nearly the probative force of the single omitted fact,

that both the owner of the land and appellees had recognized the property in one-half the growing wheat to be in such owner, by the execution and acceptance of a mortgage and conveyance thereof.

The seventh instruction is somewhat involved, and difficult to understand. It assumes to state to the jury all the modes in which a witness may be impeached; and it may be doubted whether a jury would understand the phrase—"direct contradiction"—to include acts and expressions out of court, contradictory of the claim now pressed. It then proceeds—"You cannot go beyond this and determine for yourselves that other circumstances not in legal contemplation, or aside from the evidence, tend to impeach the witness;" thus leaving it uncertain whether all modes of impeachment not enumerated were excluded, or whether it was left to the jury to determine for themselves what other circumstances, in legal contemplation, tended to impeach witnesses.

For the reasons suggested in this opinion, the judgment is reversed and the cause remanded.

Reversed and remanded.