OSCAR ·F. MILLARD et al.

v.

MARTHA W. MILLARD, Admx.

*Opinion filed April 17, 1906.*

1. PRACTICE—*reference to master by consent of parties is not a submission to arbitration.* The fact that the complainant moves to refer the cause to a master and that the defendants consent to such reference does not amount to a submission to arbitration such as makes the master's decision binding upon the complainant in the absence of fraud, accident or mistake, and the complainant is not estopped to object and file exceptions to the master's findings.

2. SAME—*objection as to competency of witness cannot be first raised in court of review.* An objection to the competency of a witness in a chancery case cannot be urged in a court of review where no objection to her competency was made before the master in chancery, when the testimony was heard, or in the trial court.

3. SAME—*in chancery the evidence is limited to the pleadings.* A complainant in chancery cannot avail himself of any claim established by the proof which has not been alleged in the bill, nor can a defendant avail himself of any matter of defense not stated in his answer, even though it appears in the evidence.

4. EVIDENCE—*what evidence not admissible as qualifying an admission.* In a chancery case, where the complainant, to prove the allegations of the bill, offers portions of the defendants' testimony in another case showing they had taken securities from a safety deposit box, the defendants are not entitled to prove other portions of their testimony showing that they claimed such securities as a gift, where their answer makes no claim to the securities but simply denies taking them and disclaims all knowledge of them.

5. GIFTS—*verbal gift without delivery transfers no title.* The defendants to a bill by an administratrix for discovery, who claim the securities in question by verbal gift, have the burden of showing, by clear and unequivocal evidence, that there was an intention on the part of the deceased to transfer the title and right of possession to the donee, and that there was a delivery of the securities by which he parted with all control over them.

6. SAME—*what evidence does not show a valid gift.* Evidence that the deceased went with his mother to his safety deposit box and selected certain securities which he put in a package in a separate compartment of the box, saying that they were hers and giving her a key to the box and a pass-word, does not show a valid gift, where he afterwards detached coupons and deposited them to

his credit, removed the contents of the box and kept them in another place for some time, exercising all acts of ownership, and where the mother never attempted to exercise any control over them for over two years, when she went to the box without the knowledge or consent of the deceased and took possession of the package, which contained other articles than those claimed to have been given to her.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. E. F. DUNNE, Judge, presiding.

PATTISON & SHAW, (SAMUEL WARE PACKARD, and DEFOREST M. NEICE, of counsel,) for appellants.

CHURCH, McMURDY & SHERMAN, for appellee.

Mr. CHIEF JUSTICE CARTWRIGHT delivered the opinion of the court:

The appellee, Martha W. Millard, administratrix with the will annexed of the estate of her deceased husband, Winfield Scott Millard, filed her bill of complaint in this case in the circuit court of Cook county against Jane H. Millard, the mother, and appellants, Oscar F. Millard and Lucy M. Simpson, brother and sister of the deceased, alleging that at the time of his death, which occurred July 27, 1896, he was the owner of a large estate, comprising both real and personal property, including a large number of gold certificates to the amount and value of several thousand dollars, a large number of interest-bearing bonds of a certain railway, and other bonds, bills, notes, securities and money, which were kept by him in his private box in the vaults of the National Safety Deposit Company in Chicago; that the defendant Jane H. Millard and the deceased alone had access to the box; that shortly before or immediately after his death the defendant Jane H. Millard, with the other defendants, took from said box the gold certificates and railroad bonds, and other bonds, money, bills and securities, and removed them

to the State of Michigan, and wrongfully sold the railroad bonds, with the interest coupons attached thereto, and retained the proceeds; that complainant had no specific knowledge or information as to the description of the property abstracted from the box or the quantity thereof, and that the defendants falsely and wrongfully claimed that the deceased gave said property to said Jane H. Millard. The complainant prayed for an answer, not under oath, and for a discovery by the defendants whether on or about April 22, 1896, or at any other time, they removed from said box and took into their possession bonds, moneys, securities for money or other property, and if they did so, calling upon them for a full and particular description of the same, and by what authority or claim of right they took said property and what disposition they made of it. If they claimed the property as a gift, they were required to set forth the facts in relation thereto, with details of time and circumstances and the particulars of the alleged gift, and the bill prayed for relief according to its averments.

The defendants severally answered, explicitly denying any personal knowledge as to whether or not the deceased ever owned the gold certificates or the railway bonds, or in regard to the bonds, bills, moneys, securities or property mentioned in the bill; and each defendant denied having gone, alone or with the co-defendants, to the vault and having removed from the box or having taken into possession the gold certificates or railroad bonds or other bonds, moneys, bills, securities or other property. To the interrogatories filed, each defendant answered that he or she did not, on or about April 22, 1896, or at any other time, either alone or in company with both or either of the other defendants, visit the vaults of the National Safety Deposit Company and take or remove any property, money, securities or bonds therefrom.

Replications having been filed, the cause was referred to a master in chancery. The defendant Jane H. Millard died

and her death was suggested in the circuit court on June 3, 1901, and the cause proceeded against the other defendants. The master took the evidence of the parties and filed his report on January 15, 1903, finding, in substance, that the deceased, Winfield Scott Millard, went to said safety deposit box in June, 1893, with his mother, Jane H. Millard, and then gave to her gold certificates amounting to $12,070, and bonds of the railway company mentioned in the bill and answers amounting to $5000, with coupons attached thereto for interest at seven per cent; that the safety deposit box contained two compartments, and he put these securities in a package and placed them in a separate compartment; that on April 22, 1896, the defendants went to the box and took out the package, which then contained said gold certificates and railroad bonds and in addition thereto a $50 greenback bill and a $10 gold piece, and that the facts proven constituted a completed and a valid gift by the deceased to said Jane H. Millard. The complainants filed exceptions to the report, which were overruled by the court and a decree was entered dismissing the bill for want of equity. From that decree an appeal was taken to the Appellate Court for the First District, and the branch of that court reversed the decree and remanded the cause for further proceedings in accordance with the opinion then filed. In that opinion the court found that there was no gift of the property by the deceased to Jane H. Millard, and that it belonged to the estate of the deceased, Winfield Scott Millard. The judgment of the Appellate Court was such that no other proceeding could be had except to enter a decree in accordance with the opinion, and the case is brought here by appeal from that judgment.

It is first contended that the findings and conclusions of the master in chancery were final, and could not be questioned by the complainant for the reason that she consented that the issues might be referred to him. The argument is, that by so doing she submitted the controversy to adjudica-

tion by the master as an arbitrator, and that, having selected such arbitrator for the decision of the cause, his decision was final, in the absence of fraud, accident or mistake. The record shows that the cause was referred to the master in chancery on motion of the solicitors for the complainant, the solicitors for the defendants appearing and consenting to the reference. The argument is not only novel, but it leads to the absurd conclusion that if a party moves the court to make an order under the statute, all rules of chancery practice are thereby set aside and the party thereby forfeits his right to object to the findings of the master or to file exceptions thereto. Section 39 of chapter 22 of the Revised Statutes provides that the court may, upon default or upon issue being joined, refer the cause to a master in chancery to take and report evidence, with or without his conclusions. Such a reference by the court is not the selection of an arbitrator by either party, whether such party asks the court to refer the cause or not.

It is next urged that where the evidence is conflicting and the conclusion depends upon the credibility of the witnesses, the findings of a master who has seen and heard the witnesses testify, when approved by the chancellor, will not be set aside unless clearly against the evidence, and for that reason the Appellate Court erred in reversing the decree. Whatever the rule may be, the testimony in this case to nearly all the material facts was not given before the master, but was read from the evidence given before the probate court in another proceeding. So far as any rule respecting the weight of the evidence could be applied it does not appear that the Appellate Court did not apply it, since it appears from the opinion that the Appellate Court found the findings of the master and chancellor to be clearly and manifestly against the evidence.

The next point made is, that the complainant was disqualified as a witness to testify for the estate of her husband as to any transaction or conversation occurring during the

marriage, even though the marriage relation had been terminated by his death, and that the Appellate Court erred in considering her testimony. That question was not raised either before the master or in the circuit court. The complainant was produced as a witness before the master, and the defendants, who were represented by counsel, made no objection to her testimony, or any part of it, for want of competency. They cross-examined her at length, and it is too late to raise the question. If any portion of her testimony was incompetent, it was the duty of the defendants to object in apt time, and the courts will not permit the testimony of a witness to be offered and received without objection before the master and in the trial court and entertain an objection to the competency of the witness afterward. (*Doty* v. *Doty*, 159 Ill. 46.) If an objection had been interposed on the ground that the witness was not competent to testify to certain facts, it may be that the same facts could have been proved by other testimony, and the question of the competency of a witness can not be raised for the first time in an appellate tribunal.

The complainant, to prove the allegations of her bill, offered in evidence portions of the testimony of the defendants given in the probate court in a proceeding for the discovery of property of the estate alleged to have been concealed or to be in their possession. It was thereby proved that the defendants, on April 22, 1896, went to the safety deposit box of the deceased, of which Jane H. Millard had the key, and took therefrom $12,070 in gold certificates, railway bonds amounting to $5000, with coupons representing a year's interest of $350, a $50 greenback and a $10 gold piece, and that neither the deceased, nor any one representing him, was present. The defendants then offered in evidence other portions of their testimony in the probate court for the purpose of establishing a gift of the property taken from the box by the deceased to the defendant Jane H. Millard. The evidence was objected to, but was received and considered by the master and circuit court. Ordinarily an admission is to be

taken as an entirety, and when a part of a statement is intro-
duced as an admission against a party, he is entitled to in-
troduce any other part relevant to the matter in issue which
will explain, qualify, limit, modify or destroy the effect of the
admission. (1 Greenleaf on Evidence, sec. 201; 1 Elliott
on Evidence, sec. 241.) In this case the evidence perhaps
went beyond the rule as applied to ordinary cases, but under
the pleadings none of the evidence so offered was admissible
or could be considered. The evidence was in contradiction
of the defendants' answers, and the findings of the master
and chancellor based upon it were at variance with the aver-
ments of the answers. The bill alleged that the securities
were taken from a safety deposit box by the defendants, and
that they falsely and wrongfully claimed a gift to Jane H.
Millard, and called upon them, if any of them claimed the
property, or any of it, by gift, to set forth the particulars
of such gift. The defendants did not make any claim to the
property, but simply denied taking it and all knowledge of
it, and thereby precluded themselves from asserting any
claim to the property. In a foreclosure case where the bill
alleged that the defendant had or claimed some interest in
or lien upon the premises, he denied by his answer the alle-
gations of the bill, and it was held that he was estopped by
the denial of his answer from claiming any interest in the
premises. (*Kehm* v. *Mott,* 187 Ill. 519.) That rule is ap-
plicable here. In equity the written pleadings must defi-
nitely inform the adverse party and the court of the facts
relied upon for relief or defense, and the answer must set
forth the facts claimed as a defense, so that the complainant
may question their legal sufficiency or take issue on the an-
swer. The pleadings must also inform the court of the points
of difference between the parties, and neither can mislead the
adversary by setting up one ground of action or defense and
proving another. A complainant cannot avail himself of
any claim established by the proof which has not been alleged
in the bill, and a defendant cannot avail himself of any mat-

ter of defense not stated in his answer, even though it should appear in the evidence. (*Kellogg* v. *Moore,* 97 Ill. 282; *Crone* v. *Crone,* 180 id. 599; *Dorman* v. *Dorman,* 187 id. 154; *Higgins* v. *Higgins,* 219 id. 146.) It was proved that the defendants, on April 22, 1896, removed from the safety deposit box of the deceased the gold certificates, bonds and money, and there was no evidence whatever in support of their answers denying that they removed the same on that day or at any other time, and the complainant was therefore entitled to a decree. The Appellate Court would have been justified in reversing the decree of the circuit court on that ground, but in the opinion which the circuit court was directed to follow in disposing of the case, the Appellate Court considered all the evidence, and, as we think, came to a correct conclusion upon such consideration whether all the evidence was admissible or not.

The defendants claimed the property by gift from the deceased to Jane H. Millard, and they had the burden of proving, by evidence which was clear and not equivocal or uncertain, that there was such a gift. It was essential to prove that there was an intention on the part of the deceased to transfer the title and right of possession of the property to Jane H. Millard, and that there was a delivery of the subject matter of the gift by which he parted with all control over it. A verbal gift without a delivery transfers no title, and unless the donor divests himself of all dominion over the subject matter of the gift the title will not pass. If he retains the custody and control over it the gift will not be completed. (*Barnum* v. *Reed,* 136 Ill. 388; *Telford* v. *Patton,* 144 id. 611; *Weaver* v. *Weaver,* 182 id. 287.) The only witness who testified to what was claimed as an actual gift was Jane H. Millard, and her testimony did not prove a valid gift, since it showed that she did not obtain exclusive control over the subject matter of the alleged gift and that there was no delivery as the law requires. The deceased was worth $100,000 or more, and at the time of the alleged gift

had a wife and son about eight years of age. His mother, Jane H. Millard, was an aged woman seventy-seven years old, and eighty years old when he died, and was in excellent financial circumstances, with an ample income and not in need of any assistance from him. He kept the property in question in the National safety deposit vaults at Chicago, where he also had United States government bonds and West Chicago Street Railway bonds, both of which were registered in his name. A little more than a year before his death he had three packages of gold certificates, one of which contained more than $15,000, some currency and a diamond stud and ring, and after his death all that was found was $29,000 in government bonds, West Chicago Railway bonds amounting to about $6000, and a bank certificate of deposit in his name. No one else could collect any of these securities, and everything not registered in his name had been taken away. At his death he left the complainant, his widow, and the son, who was then about eleven years of age. The testimony of Jane H. Millard was, that she received a telegram in June, 1893, in Kalamazoo, Michigan, where she lived, from the deceased, asking her to meet him in Chicago; that she did so, and they went to the vaults where he had the box; that he took out the box and counted over what he had in it, and took the gold certificates for over $12,000, and some bonds, and put them in a package in one of the two compartments of the box and said they were hers, and that she never went to the vaults again until January, 1896. At the time of the alleged gift the deceased gave to Jane H. Millard a key and the pass-word, but she did not exercise or attempt to exercise any act of ownership over the alleged gift and did not visit the box for two years and a half. In the meantime he had and exercised the entire control over the property, and part of the time it was not in the box. The interest on the railway bonds was payable semi-annually, and he removed the coupons as they became due and collected them and deposited the proceeds to his own credit in

the Commercial National Bank. The bonds were due in 1897, and everything indicates that if he had lived that long he would have collected them. She could have had access to the box, but he did not surrender control over it or the securities, and she did not attempt to exercise such control or to collect the interest, and could not have understood that there was a present gift of the bonds in June, 1893. Part of the time, at least, the bonds were in the vaults of the Commercial National Bank, and not in the box to which Jane H. Millard had the key. On March 8, 1895, the bonds were in the Commercial vaults, and the deceased removed the coupons and deposited them to his credit in that bank. Again on July 22, 1895, he removed the July coupons and appropriated them in the same way, and every six months he deposited the proceeds of the interest in the Commercial National Bank. The bonds were returned to the box in the National vault on July 22, 1895. The deceased was in bad condition physically for several years before his death, and his condition became such that he was not out of his house for eight or nine months before he died. After he became unable to leave his house, he sent his wife, the complainant, on February 28, 1896, with an order to the National Safety Deposit Company to allow her access to the box, that she might remove the coupons from the railway bonds. She was identified, but under the rules of the concern was not admitted, and the coupons remained on the bonds and were taken when they were finally removed from the box by the defendants. On April 7, 1896, the deceased wrote a note to his mother, Jane H. Millard, who then lived in Chicago, asking her to send him a promised package by his son, and he sent the note by his son, accompanied by a man employed to take care of the deceased. She did not comply with the request but said she would see about it. On the same day he sent a second note to her, asking her to send the package by the bearer, and she did not send it. Her testimony was that the package referred to was the key of the safety deposit

vaults, and this evidence shows that he was then trying to get possession of it. Jane H. Millard testified that she was at the box in the latter part of January, 1896, and saw the package which she claimed belonged to her, but did not open it. She never exercised or attempted to exercise any control over it until April 22, 1896, when the defendants went to the vaults and took away the railway bonds, the gold certificates and the $50 and $10, and nothing was left that was not in the name of the deceased which no one else but he could realize on. That visit to the box and removal of the property was without the knowledge of the deceased and in his absence, when he was confined to his house. On July 27, 1896, the day of his death, the defendants again visited the box and overhauled its contents and made an inventory of them, when nothing was left that did not stand in the name of the deceased. The testimony of Oscar Millard, one of the defendants, was, that he visited the deceased about the 10th or 11th of April, 1896, and the deceased told him he thought it was time his mother should take the package away, and to tell her to get it and put it in some other place. The defendant Lucy M. Simpson testified that the deceased told her he had provided for his mother in gold certificates and bonds in the safety deposit box of which she had the key, and he wanted the witness to see that she got them. Another witness testified that a few days before his death he told her that he and his mother had a box together in the safety deposit vault; that she had a package there and that he wished she would take it out; that he would not last long and he wanted her to have the package before he died. There was evidence that at the time of these conversations the deceased was much of the time unable and unfit to transact any business, and at the time of the last conversation the attending physician did not consider him possessed of sufficient intelligence to transact business. There was other evidence that no such conversation occurred, and the witness admitted that the deceased could scarcely speak and it was very difficult to understand him.

But if the conversations occurred as claimed, and the deceased was then capable of making a gift, his statements did not constitute a gift. So far as he knew, the property had not been taken by Jane H. Millard or delivered to her. He did not deliver it, for he did not know that she had taken it and he had no part in the delivery. The conversations showed, if they showed anything, that he supposed the securities were still in the box. The gift was not completed by the act of the defendants in taking possession of what they found in the box, not standing in the name of the deceased and which they could make use of, when such taking was without the knowledge of the deceased; and they not only took what Jane H. Millard claimed had been given to her, but also the greenback and gold piece which they said was in the package and which she did not claim had been given to her. She was a very aged woman at the time and died during the pendency of the suit, and the act of taking the securities was perhaps less her act than that of the other defendants. After they had taken the property, the defendant Oscar Millard, with the consent and connivance of the defendant Lucy M. Simpson, sold the railroad bonds through the City National Bank of Kalamazoo, Michigan, without the knowledge of their mother, Jane H. Millard, and deposited the proceeds, together with the gold certificates, in his own name in a safety deposit.

It seems to us clear that there was no gift of the property, and we are entirely satisfied with the conclusion of the Appellate Court, even if all the evidence before the master and circuit court is to be considered. We do not think the defendants should be permitted to retain property acquired by a raid, in which they participated, on the safety deposit box, without the knowledge of its owner, and they should be required to surrender the proceeds.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*