In re Estate of Fred Huston, Deceased.
Jo Ann Huston, Minor, by Edith Huston, Mother and
Next Friend, as Heir at Law of Fred Huston, De-
ceased, Appellant, v. Robert Huston, Administra-
tor of Estate of Fred Huston, Deceased, Appellee.

Gen. No. 9,382.

Opinion filed May 27, 1943.

MacDonald, Meyer & Meyer, of East St. Louis, for
appellant.

C. G. Colburn, of Virginia, Ill., for appellee.

Mr. Justice Hayes delivered the opinion of the court.

Jo Ann Huston, a minor, by Edith Huston, mother and next friend, as an heir at law of Fred Huston, deceased, who met his death in an automobile accident on August 26, 1941, filed a petition in the county court of Cass county asking for a citation against Robert Huston, administrator of the estate of Fred Huston, deceased. Fred Huston was the father of Jo Ann. Jo Ann was about four years of age when her father died. Robert Huston, the respondent in this petition, was a nephew of Fred Huston. The facts in this record are exceedingly meager. Robert Huston was the only witness who testified. He was acting as administrator of the estate of Fred Huston, deceased, and defending against the petition of the infant daughter of the decedent who was the sole heir. It was alleged in said petition that the respondent failed to file an inventory therein, or to account for certain funds in his hands belonging to said estate. The county court ordered a citation to issue. A hearing was had on said petition and the court entered an order dismissing the petition from which judgment an appeal was taken to the circuit court of Cass county. On a hearing *de novo,* the circuit court rendered an opinion holding that the respondent proved a prima facie case of a gift *inter vivos* of the money in question from Fred Huston to respondent and entered judgment dismissing the appeal from the county court and assessing costs against petitioner.

It appears from the record that about the middle of June 1941 Fred Huston came to Philadelphia, Illinois and lived there with respondent until his death on August 26, 1941; that he had previously obtained a sum of money in settlement of a claim for personal injuries arising from an automobile accident in which

he lost his leg and that around the first of August 1941 there was a divorce suit filed against him in St. Louis. In July 1941, according to the testimony of respondent, decedent turned over twenty two hundred dollars to respondent by a check. About a week later respondent returned two hundred dollars of this money to Fred Huston. During the following three weeks respondent returned different sums aggregating three hundred dollars, in addition to the two hundred dollars, to decedent. Respondent bought a house in Philadelphia, Illinois for $835 and expended the balance of $865 between the hearing in the county court and the hearing in the circuit court.

Robert Huston testified that his uncle had given him the money by check, but he failed to produce the canceled check either in the hearing before the county court or the hearing in the circuit court. He first stated that the check was "in the neighborhood of twenty two hundred dollars," and later in his testimony said "it was an even twenty two hundred dollars," and that he thought it was given to him in July but he was not positive. He fails to testify as to how he repaid this five hundred dollars to his uncle other than he gave him two hundred dollars within a week following the gift, and the balance or three hundred dollars in the interim of the gift and the death of the uncle. No receipts or canceled checks were produced by him to show these payments, neither did he make any explanation or excuse for not producing these checks. If they ever were in existence they, of course, would be in his possession or be at the bank where he could get them. At both the hearing in the county court and in the circuit court he was asked about them. When he was asked in what amounts the five hundred dollars were given he replied, "in different amounts." When he was asked about the exact date of the several amounts after the two hundred dollars he replied, "I don't know." He also fails to state

whether he bought the home before or after the death of his uncle. He said he used some of the balance to repair the house and when asked how much, he replied, "I don't know." At the hearing in the county court he still had a balance on hand, but at the hearing in the circuit court he said he had spent the balance and testified, "The judge told me it was mine so I spent it."

He had a conversation with Edith Huston, his uncle's wife, at his uncle's funeral and she inquired of him how much money Fred Huston had, and the witness replied that there was some money but didn't say how much. He failed to claim the money as his at that time on account of a gift *inter vivos,* but volunteered that he would help the baby when she got to High School. Immediately after the funeral Robert Huston paid the Holland Clinic $156.50 and the Smith Memorial Hospital $98.35, both being debts of Fred Huston. On the same day set for the hearing in the county court on this citation, he filed a claim covering these two payments. At this time it is reasonable to infer that respondent was treating the funds as belonging to the dead man's estate and applied it to the payment of his debts.

It is well settled that when the claim of a gift is not asserted until after the death of the alleged donor, it is regarded with suspicion by the courts and must be sustained by clear and satisfactory evidence of every element which is requisite to constitute a gift. *Estate of Williams v. Tuch,* 313 Ill. App. 230; *Eichin v. Eichin,* 244 Ill. App. 89, 24 Am. Jur., sec. 133, page 799.

The circumstances surrounding Fred Huston at the time of the purported gift were these; he was then separated from his wife and infant child; a divorce suit was about to be filed against him; he was unable to work as he had recently lost a leg, and the twenty two hundred dollars was all the money he had. Shortly before, he had gone to his nephew's to make his home. Under this record respondent fails to show any rea-

son, motive or purpose to cause decedent to make the purported gift.

The record is silent on the man's age, mental condition, habits or the fact that decedent acted on his own free will or his intention to transfer the money as a gift rather than a loan or a deposit. The circumstances would indicate decedent was facing a divorce suit and that he transferred his funds to his nephew in whom he had confidence and under whose roof he was living, with an arrangement that he could get back his money as he desired after the divorce litigation. This is verified by the fact that he kept drawing on his nephew as he needed money until his untimely death.

It is unthinkable that a man with one leg, unable to earn his living, would strip himself of every penny he had on earth and hand out twenty two hundred dollars to a nephew without any contract or agreement for care and keep the rest of his life, and no provision for sickness, last illness, funeral expenses, care and support of a four year old daughter, and give it all to a nephew. Still this is the conclusion that must be reached under the testimony of Robert Huston to support a gift *inter vivos*. Respondent's testimony would carry more weight if the check had been produced and the two bankers who were present at the purported transaction had been called. The fact that they were not called, justifies a court in concluding that their testimony would be adverse to that of the respondent.

The burden of proof of a gift is on the donee to prove all facts essential to a valid gift. It is not only essential that delivery be shown but it must be accompanied with intent to pass the title and this must be established by clear and convincing evidence. Mere possession, by one claiming property as a gift after the death of the donor, is insufficient to prove a valid gift. The mere fact that Robert Huston had possession of the money in question at the time of the death of his uncle is not enough to establish a gift *inter*

*vivos.* It is necessary that he show that the donor gave him the money permanently with the intention to make an absolute gift without restrictions. This has not been shown. To the contrary it appears that the donor continued to withdraw money from the fund from the time of the transfer to his death, and it further appears that the donee did not claim the fund as his own until after the death of his uncle, and then not until he was cited in court to account for the same. These circumstances bar a gift *inter vivos. Rothwell v. Taylor,* 303 Ill. 226; *Richardson v. Richardson,* 148 Ill. 563; *People v. Polhemus,* 367 Ill. 185; *Millard v. Millard,* 221 Ill. 86.

The respondent claimed the property by gift *inter vivos* and he has the burden of proving by evidence which is clear and not equivocal or uncertain that there was such a gift. It is essential to prove that there was intention on the part of the deceased to transfer the title and that the donor parted with all control over it. This proof is lacking and by reason thereof the gift fails. *Millard v. Millard, supra; Barnum v. Reed,* 136 Ill. 388.

The trial court permitted respondent to testify that he got a check from decedent and deposited it in his own personal account. Objection was made to this testimony on the ground that it was not the best evidence, which objection the court overruled. Clearly this was self-serving. The best evidence was the canceled check and the bank's records. *Hardware Mut. Casualty Company v. Baldus,* 316 Ill. App. 283.

The facts and circumstances in evidence show that the donee occupied a confidential relationship with the donor. Where the relations between the parties appear to be of such a character as to render it certain that they do not deal on terms of equality, but that on the one side, from dependent confidential relation, unfair advantage in a transaction is rendered probable, the transaction is presumed void, and it is incumbent

on the stronger party to show affirmatively that no deception was practiced, no undue influence was used, and that all was fair, open, voluntary and well understood. This presumption applies in every instance where the relation between the donor and donee is one in which the latter has acquired a dominant position. The burden is on the one receiving the benefit to show an absence of undue influence by establishing the fact that the donor acted upon competent and independent advice of another, or such other facts as will satisfy the court that the dealing was at arm's length, or he must show that the transaction was had in the most perfect good faith on his part and was equitable and just between the parties. *Kittle v. Brown,* 161 Ill. App. 98, 28 C. J., sec. 72, page 670; *Gilmore v. Lee,* 237 Ill. 402, and *Thomas v. Whitney,* 186 Ill. 225.

The burden was on the respondent to establish by clear and convincing evidence, all the essentials of a gift *inter vivos* and this he failed to do. Until this burden was met the infant was not called upon to make any proofs. We find as a matter of fact a gift *inter vivos* was not established. We therefore reverse the judgment of the circuit court of Cass county and remand the case to said court with direction to enter an order compelling respondent to inventory the funds in question as prayed for in the petition for citation and for further proceedings consistent with opinion.

*Reversed and remanded with directions.*