## WARD et al. v. COMMISSIONER OF INTERNAL REVENUE.
### No. 6616.

Circuit Court of Appeals, Ninth Circuit.
May 23, 1932.

Chandler, Wright & Ward and Chandler P. Ward, all of Los Angeles, Cal., for petitioners.

G. A. Youngquist, Asst. Atty. Gen., J. Louis Monarch, F. Edward Mitchell, and J. P. Jackson, Sp. Assts. to Atty. Gen. (C. M. Charest, Gen. Counsel, and R. W. Wilson, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for respondent.

Before WILBUR and SAWTELLE, Circuit Judges.

SAWTELLE, Circuit Judge.

This appeal involves an alleged deficiency in income taxes, as found by the Board of Tax Appeals, for the years 1922, 1924, 1925, and 1926 in the amounts of $1,822.41, $2,435.81, $3,252.87, and $1,765.86, respectively. During the pendency of this proceeding before the Board of Tax Appeals, Shirley C. Ward, the taxpayer, died. The executors of his estate are the petitioners in this court.

The following is disclosed by the agreed statement of facts herein: In 1913 the decedent became the lessee for a term of 99 years of certain premises known as the Pohlman property, located at Seventh street and Grand avenue, in the city of Los Angeles, Cal., owned by one Philip Pohlman. In 1917 decedent assigned this lease to the Pohlman Leasehold Company for the remainder of its term. In 1920 the Pohlman Leasehold Company sublet the property back to decedent for the unexpired term, less one day. Under the provisions of the latter agreement and of the original basic lease, decedent agreed to pay to the Pohlman Leasehold Company the sum of $200 per month for the first two years and $300 per month thereafter, and the sum of $1,600 per month to Philip Pohlman.

May 26, 1920, decedent sublet the property for the remainder of his term, less one day, to the California Chocolate Shops, Inc., E. C. Quinby, and P. W. Quinby, and the sublessees assumed all of the obligations of decedent to Philip Pohlman and the Pohlman Leasehold Company. The rentals agreed to be paid thereunder ranged from $2,100 per month for certain years to $3,600 per month for the remaining years. This sublease provided that all rents due under it would be paid to a trustee, to be distributed by the trustee to the owner and the sublessors. This provision reads as follows: "As security to the lessees that the ground rental called for in the original lease on the demised premises from Philip Pohlman to Shirley C. Ward, dated December 4, 1913, as modified by the agreement hereinabove mentioned of December 22, 1917, will be paid by the lessor herein to the original lessor, Philip Pohlman, or his heirs, successors or assigns, as and when the same becomes due, and as security that the rental payable by Shirley C. Ward, as lessee to the Pohlman Leasehold Company, as lessor, under the lease of said premises held by said Ward from the Pohlman Leasehold Company, will be paid as and when the same becomes due and payable, it is agreed that all rentals payable hereunder shall be payable to the Los Angeles Trust and Savings Bank, as trustee under instructions to said bank to distribute such rental in accordance with the rights thereto of Philip Pohlman, the original lessor, and of the Pohlman Leasehold Company, the subsequent lessor, and the remainder of such rental, after the rentals due Philip Pohlman and due the Pohlman Leasehold Company have been paid, to the lessor herein, Shirley C. Ward. The lessor herein, or his heirs, successors or assigns, may have the privilege at any time of changing the trustee to whom said rentals shall be payable, provided said trustee shall at all times be a responsible trust company having an office in and doing business in the city of Los Angeles."

January 2, 1922, decedent executed and delivered to Blanche C. Ward, his wife, a written assignment of all his interest in the rentals from the sublease to the California Chocolate Shops. The pertinent portions of this assignment read as follows:

"In consideration of love and affection, I hereby assign, set over and transfer to my wife, Blanche C. Ward, the following property to be her own, absolute and sole and separate property, free from any claim of mine whatsoever, viz.: * * *

"Second. All my interest in the rentals on the Pohlman property at the northeast corner of 7th Street and Grand Avenue, Los Angeles, California, payable to me under lease from me to the California Chocolate Shops, E. C. Quinby and P. W. Quinby, dated May 26, 1920, now recorded in the office of the County Recorder of Los Angeles County, California. * * *

"It is my interest in such Chocolate Shops-Quinby rentals, subject to the foregoing charges thereon, that is intended to be assigned hereby; the net rentals coming to me and so assigned hereby being as follows, viz.: Until January 1, 1923, $300.00 per month; thereafter until Bryan and Bradford are paid off $1150; thereafter to the

end of the ninety-nine year lease $1450 per month. " " " "

Thereafter the said rentals were paid by the trustee to Blanche C. Ward and to her daughters, to whom she subsequently assigned a portion of the income.

January 12, 1922, decedent executed an assignment to his sister, Annie E. Ward, of $250 per month from these same rentals, and thereafter that sum was paid monthly by the trustee to Annie E. Ward.

The net income accruing to the decedent under the terms of the California Chocolate Shops sublease, and paid by the trustee to the assignees of decedent, amounted to $3,600 in 1922; $16,800 in 1924; $13,800 in 1925; and $12,400 in 1926. These rentals were included as income for the respective years in the income tax returns filed by the assignees, decedent's wife, daughters, and sister. No part of the amounts was reported as income by decedent in his returns for those years. The Commissioner of Internal Revenue determined that the amounts should have been returned as income by decedent in the respective years, and this determination was affirmed by the Board of Tax Appeals.

Decedent was also the owner of a certain lot in Los Angeles and the building thereon, known as the Kinema Theatre Building, which covered all of the lot except a strip ten feet wide along the southern boundary. This property was sold by decedent in 1919, but the deed reserved to the grantor, his heirs and assigns, an easement over the vacant strip of land on the southern boundary of the lot as long as the Kinema Theatre Building remained thereon. In 1920 decedent granted to the Standard Fireproof Building Company the right to use this strip of land as a means of access to and egress from a structure adjacent thereto known as the Brack Shops Building, for a consideration of $200 per month. By the assignment of January 2, 1922, above referred to, decedent also assigned to his wife his right to receive this $200 per month payment from the Brack Shops Building for the use of the easement and thereafter she received said rental.

In 1924 and 1925 decedent included the rentals received from the Brack Shops Building for the use of the easement in his income tax returns, but the rentals were not included as income in his returns for the years 1922 and 1926. The Commissioner of Internal Revenue determined that the rentals should have been included in the 1922 and 1926 returns also, and his determination was affirmed by the Board of Tax Appeals.

The question thus presented is whether an assignor, by an assignment of bare rentals without assigning the lease that produces the rentals, can relieve himself of income taxes thereon. We think the question must be answered in the negative.

■ From the language of the assignments, it seems clear that decedent intended to assign only his right to the income from the lease and not the lease itself or any interest therein, other than the rentals to accrue thereunder. The language used is: "I hereby assign " " " all of my interest in the rentals on the Pohlman property; " " " " again: "It is my interest in such Chocolate Shops-Quinby rentals " * * that is intended to be assigned hereby"; and, again: "I further hereby assign, transfer and set over to my wife my right to receive from the Brack Shops Building " " " a monthly rental of $200 per month * * * ." Decedent's son and legal advisor, one of the petitioners here, testified: "I examined a draft which he had prepared, and we discussed the subject of whether the Pohlman property rentals alone should be the subject of the assignment or whether it should also include the reversion. It was my advice to him at that time that inasmuch as he was dividing the rents between his sister as to $250 a month, and his wife as to the balance, that he should not transfer the reversion, inasmuch as both women were inexperienced in business affairs, and the building required to be erected by the tenant, California Chocolate Shops, Inc., had not yet been erected, and it might be necessary to give an extension of time, or rearrange its obligations in reference to the erection of that building, and that the reversion, therefore, and the final determination of the problem of securing performance of the lease, would best be left in his hands. It was for that reason that the rents and the reversion are separated in the instrument."

It is urged by petitioners, and conceded by respondent, that the owner of a reversion may sever the rents therefrom and grant them separately. At the same time, however, petitioners contend that the assignment of all the income under the lease operated to pass reversion. However, the admitted facts and pertinent excerpts from the instruments assigning the income do not support this contention. Moreover, it cannot be said that the assignees would be liable for any default on the part of their assignor with respect to the terms of the original demise from the owner of the property; and it is doubt-

ful if the assignees could sue for any default or breach on the part of the sublessees. In other words, the mutual obligations of the several parties to the lease and subleases remained the same after the assignment of the rentals by the deceased sublessor. In this situation, decedent was free to transfer the lease itself, thereby depriving himself of the right to receive future rentals and rendering the assignments to petitioners valueless and ineffective. It is clear, therefore, that decedent retained title to the lease, the income producing corpus, and the interest of the assignees was merely in the nature of a right to receive the rentals as and if they accrued to their assignor.

In its opinion the Board of Tax Appeals said:

"It is the contention of the petitioners that in each case the decedent, by his assignment, completely divested himself of all property rights and interests in and to the several sums paid under these contracts to his assignees, so that when paid they constituted income to such assignees and not to decedent. * * *

" * * * Since the status of the decedent, as lessor, under this lease remained unchanged and all payments of rent were made to his nominee, it follows that when so made they belonged to him and were a part of his income when received by the bank. * * *

"In each of the several decisions cited by the petitioners, to sustain their contentions, the basic facts have shown not simply that the rights involved were such as could be legally assigned, but the further fact that the assignor had in each case actually parted with all or some part of his title to the income producing corpus. In the present case the producer of the income was decedent's lease, not the funds after payment into the bank. And it was to portions of this fund that the decedent passed title by his assignments which, after receipt and disbursements otherwise made by the bank but not before, became accounts receivable in favor of the assignees. * * *"

In other words, the Board held that the assignment merely of the rentals to accrue, without an assignment of the lease itself, did not relieve the assignor of his liability for income taxes, inasmuch as he remained the owner of the lease, or income producing corpus.

In Bing v. Bowers (D. C.) 22 F.(2d) 450, 454, affirmed (C. C. A. 2) 26 F.(2d) 1017, the taxpayer had assigned to his mother an annuity out of his share of the income from certain properties owned by him, in whole or in part. In holding that the taxpayer was subject to income tax on the gross income, Circuit Judge Mack, sitting in the District Court, said: "To permit the assignor of future income from his own property to escape taxation thereon by a gift grant in advance of the receipt by him of such income would by indirection enlarge the limited class of deductions established by statute. As long as he remains the owner of the property, the income therefrom should be taxable to him as fully, when he grants it as a gift in advance of its receipt, as it clearly is despite a gift thereof immediately after its receipt."

In Rosenwald v. Commissioner Lucas (C. C. A. 7) 33 F.(2d) 423, 426, certiorari denied, 280 U. S. 599, 50 S. Ct. 69, 74 L. Ed. 644, the taxpayer had assigned, among other things, all rentals accruing to him, as lessor, under a certain lease, and the court held that the rentals were taxable as income of the assignor, saying:

"The ultimate question here is, Did petitioner so divest himself of the income from the securities mentioned that it never became taxable income as against him?

"Petitioner's chief contention is that there was a completed gift, and that petitioner never received the income.

"It is doubtful whether a holder of securities may separate the income thereafter to accrue from the principal, and make a gift by way of assignment of the income, without assigning or trusteeing the thing out of which the income arises, where the effect would be to relieve the donor from a tax he would otherwise be required to pay."

Numerous other cases also hold that assigned income is taxable to the assignor, unless the corpus producing the income is also assigned. See Appeal of Fred W. Warner, 5 B. T. A. 963, and Irene McFadden Winder, Executrix, v. Commissioner, 17 B. T. A. 303, and cases cited therein. See, also, Porter v. United States (Ct. Cl.) 52 F.(2d) 1056; Bishop v. Commissioner (C. C. A. 7) 54 F.(2d) 298.

Likewise, an assignment making the assignee a joint tenant of salary to be earned does not relieve the assignor from income tax liability on the whole thereof. Lucas v. Earl, 281 U. S. 111, 50 S. Ct. 241, 74 L. Ed. 731.

It has been held that an assignment of future profits from a partnership without an assignment of the partnership property, that is, without an assignment of the income producing corpus, is an assignment merely of in-

come. Such income is taxable against the assignor. Mitchel v. Bowers (C. C. A. 2) 15 F.(2d) 287, certiorari denied, 273 U. S. 759, 47 S. Ct. 473, 71 L. Ed. 877; Harris v. Commissioner (C. C. A. 2) 39 F.(2d) 546; Burnet, Commissioner, v. Leininger, 52 S. Ct. 345, 76 L. Ed. —, decided March 14, 1932, reversing (C. C. A.) 51 F.(2d) 7.

The assigned rentals were therefore properly taxed as income of the decedent in the first instance.

■ As above stated, decedent was the owner of an easement used as an approach to the Brack Shops Building, which right of way he had leased to the Standard Fireproof Building Company, lessee of the Brack Shops, at a rental of $200 per month. Later the Standard Fireproof Building Company sold its leasehold interest in the Brack Shops and the purchaser thereof agreed to pay decedent the $200 monthly easement rental theretofore paid by the Standard Fireproof Building Company. As an incident to the sale of the Brack Shops lease, decedent transferred to the Standard Fireproof Building Company his easement over this lot, in consideration of the purchaser of the leasehold estate continuing the $200 monthly rental therefor. Petitioners now contend that decedent thereby divested himself of all title to his property right in the easement in exchange for a contract right to receive the rent for the use of the easement, and that therefore, at the time of the assignment of this rental to his wife, he had merely a right to receive the $200 monthly rental—an account receivable—which passed in toto to his wife by the assignment. The Board of Tax Appeals, on the other hand, held that decedent retained full title to the basic easement and the reversion, and that his assignee acquired merely a right to receive these monthly rentals as they accrued.

What has been said hereinabove with reference to the interest which the assignees took under the assignments of rents from the Pohlman property is equally applicable to the interest which the wife took in this monthly easement rental. We believe that the Board of Tax Appeals was correct in holding that decedent retained in himself the basic easement and reversion. The language of the so-called deed granting the easement to the Standard Fireproof Building Company would so indicate. It recites: " * * * But the rights hereby granted are not intended to interfere with or to restrict the existing rights of the grantor in such strip of land except to the extent of the rights in

such strip of land herein specifically granted to the grantee, its successors and assigns, and shall not interfere with the grantor's rights to give similar rights and privileges to other properties abutting on such ten foot strip of land * * * on such terms and for such consideration as the said grantor may fix and determine."

■ It is further contended by the petitioners that the instrument above referred to, whereby the Los Angeles Trust & Savings Bank was designated as trustee to receive and disburse the monthly rentals as specified in the several leases, constituted or created a trust; that the beneficial interest under such trust was assigned; and that the assignees and not the assignor were taxable with the income.

We think there is no merit in this contention for the obvious reason that no trust was created, except for the limited purpose of enabling the bank to receive and disburse the rentals. The lease was still held and owned by the decedent. The bank was merely a collection agent, and had no trust estate in its possession. It had no title to or power over the leases producing the rentals.

As we have seen, the decedent could have disposed of the corpus and thereby terminated the authority of the bank entirely. Such an arrangement as here shown does not constitute a trust within the meaning of the cases upon which the petitioners rely.

This income was, therefore, properly taxable as income of decedent.

Affirmed.