## SCHWARTZ v. COMMISSIONER OF INTERNAL REVENUE.

### No. 10020.

United States Court of Appeals Seventh Circuit.

Dec. 15, 1950.

Taylor & Crowley and Daniel A. Taylor, all of Chicago, Ill., for petitioner.

Theron Lamar Caudle, Asst. Atty. Gen., Ellis N. Slack, Sumner M. Redstone, S. Walter Shine, Sp. Assts. to Atty. Gen., for respondent.

Before KERNER, DUFFY and FINNEGAN, Circuit Judges.

FINNEGAN, Circuit Judge.

This appeal involves the income tax of the taxpayer, Emanuel Schwartz, for the year 1943. The Commissioner of Internal Revenue, on August 22, 1946, claimed a deficiency of $26,175.42 in the income tax liability of Schwartz for the year ending 1943.

The taxpayer on November 14, 1946, sought a redetermination of said deficiency in the Tax Court of the United States. Such redetermination was had and by its order of June 2, 1949 the Tax Court decided that there is a deficiency in income tax for the year 1943 in the amount of $24,014.92. This proceeding seeks a review of the Tax Court's decision.

The record discloses that prior to June 9, 1934, Moses H. Rosenblum owned fee simple title to the real estate known as 206 Washington Street, and 6 and 8 Genesee Street, in Waukegan, Illinois, (commonly called the Neisner Building) leased for a term of twenty-five years from February 4, 1928 to Neisner Brothers, Inc., at an annual rental of $24,000. The property was encumbered with four mortgages.

On April 30, 1931, the lessors of the property, Moses H. Rosenblum and his wife Rose, with the written consent of the lessee, assigned *all their interest in the lease* to the taxpayer as security for the payment of a note originally in the amount of $50,-000, secured by a second mortgage on the Neisner property.

This second mortgage had previously been assigned to taxpayer by Neisner Brothers, and the principal amount due at the time of assignment was $19,000. The assignment provided that "upon payment of the said note and compliance with the terms and conditions of said mortgage, this assignment shall become null and void."

It further provided that the said Moses H. Rosenblum and his wife Rose *were to retain possession of said premises* unless and until default was made in the payment of said note and interest, or until failure to comply with the terms and conditions of said mortgage.

This assignment was filed and recorded in the office of the Recorder of Deeds in and for Lake County, Illinois.

On July 22, 1931, said lessors executed another assignment of the lease, without the consent of the lessee, which was not recorded. This additional assignment herein referred to as "Supplemental Agreement" was given to secure certain notes aggregating $34,330, and a check dated May 16, 1931, for $250, a total of $34,580.

The assignment of July 22, 1931, known as the "Supplemental Agreement," provided that the assignment of April 30, 1931, should also serve as collateral security for the payment of the notes, interest and commission, mentioned in the said agreement.

On August 25, 1933, the holders of the fourth mortgage started foreclosure proceedings in the Circuit Court of Lake County, Illinois. They asked for a foreclosure of their mortgage and an accounting of rents. The court appointed a receiver. The holders of the first and third mortgages also became parties to the foreclosure and receivership litigation for the purpose of asserting rights claimed by them under their respective mortgages.

The lessee of the premises, Neisner Brothers, Inc., refused to pay taxpayer

rents accruing after September 1, 1933, and suit was instituted by him on September 22, 1933 to recover such rents. By order of the Lake County Circuit Court the suit for rent and the suit to foreclose were consolidated and referred to a Special Master.

In his report the Special Master fixed the liens against the property in their order of priority. The court approved the report and found, among other things, that the taxpayer, by virtue of his second mortgage and assignment of the lease, was entitled to a second lien on the property in the amount of $21,876.59 with interest at 7% per annum from October 1, 1934, and also entitled to the rents from the property, and they should be applied to the second mortgage indebtedness.

The Special Master and the court also held that the sum of $16,000 was due from the lessee for rent, and recommended that the lessee be directed to pay the amount for application on the balance of $21,876.-59 due on the second mortgage held by taxpayer, and have the right to pay the balance of $5,876.59, with interest, to taxpayer, for application on the balance due on the mortgage, and to deduct the amount from rents thereafter accruing, subject to the order of the court, with reference to the application of rents due under the lease on and after September 1, 1933, and that the $9,000 being claimed by taxpayer under his guarantee of mortgage notes of Rosenblum was not includible in the indebtedness secured by the "Supplemental Agreement."

On June 9, 1934, Rosenblum filed a petition in bankruptcy in the District Court of the United States for the Northern District of Illinois, Eastern Division, and on February 7, 1935, he was adjudged a bankrupt.

On April 14, 1936, the trustee in bankruptcy sold for $1,275 all the right, title and interest of Rosenblum in the Neisner Building to Arthur H. Hoyle, a nominee of the taxpayer, *subject to all liens and encumbrances against it.* Rosenblum was discharged in bankruptcy on April 27, 1936.

In 1932, A. F. Beaubean had obtained judgment against Rosenblum in Lake County, Illinois, the Neisner Building was sold under execution issued on that judgment to A. F. Beaubean, Rosenblum redeemed from that sale on February 20, 1941. Another judgment against Rosenblum in favor of John Cella was entered in Lake County. The Neisner Building was sold on execution thereunder to Frederic O. Mason who assigned his certificate of purchase to Moses H. Rosenblum, to whom a sheriff's deed issued in February, 1941.

On April 22, 1941, taxpayer and Hoyle filed a cross bill in the foreclosure proceedings alleging that Hoyle held fee simple titled to the Neisner Building, subject to the first and second mortgages, and the dower interest of Rose Rosenblum, claiming that the Rosenblums owed the taxpayer $33,580 on ten notes and a check, plus interest secured by the "Supplemental Agreement", and $9,000 for a payment made on account of his guarantee of certain notes of Rosenblum, unless the court held that the amount should be reduced by rent collections amounting to $35,933.31. In the alternative the taxpayer and Hoyle asserted that if the claim of Rosenblum was upheld, Rosenblum was liable to taxpayer for $69,534.33 for principle and interest on the notes and check secured by the assignment of April 30, 1931, and the "Supplemental Agreement," unless reduced by application of rents received by taxpayer.

In answer to the cross bill Rosenblum admitted the execution and delivery of the notes held by the taxpayer; alleged the loans evidenced by five of the notes in the aggregate principal of $29,330 were usurious; denied the $9,000 indebtedness; and alleged that he held title to the equity in the Neisner Building under a sheriff's deed issued to him on February 20, 1941.

Between September 1940 and May 1942, counsel for the taxpayer and Rosenblum corresponded and conferred with respect to a settlement of the existing controversy, their dealings culminated in the "Settlement Agreement."

On May 11, 1942, Rosenblum submitted a written offer of settlement to the taxpayer "in full settlement and satisfaction of all your claims against me personally, against my wife and sons, and against the store

property at 206 Washington Street, and 6 and 8 North Genesee Street, in Waukegon, Illinois, I offer to give you an $80,000 6% note secured by a second mortgage against the above property." This offer was joined in by Rose Rosenblum and Edward Rosenblum, wife and son respectively, of Moses Rosenblum, and accepted by taxpayer on May 14, 1942.

The settlement was carried out through an escrow arrangement with the Chicago Title and Trust Company, and taxpayer received the $80,000 in notes, and his mortgage was paid off. Throughout the controversy these notes have been regarded by both parties as being equivalent to cash, and have been treated as cash.

The taxpayer in his income tax return for 1942 reported a long term capital gain of $44,145 realized from the receipt of the $80,000 in notes in the settlement with Rosenblum. He computed it as follows:

| Cash value of note | | | $80,000 |
|---|---|---|---|
| Cost of property exchange | | $ 1,275 | |
| Cost of assignment of rents: | | | |
| Notes | $34,330 | | |
| Check | 250 | 34,580 | 35,855 |
| Capital gain | | | $44,145 |

In his determination of the deficiency, the Commissioner held that the transaction did not constitute a sale or exchange of capital assets, and the taxpayer realized ordinary income of $47,625 in the transaction, computed as follows:

| Notes received | | $80,000 |
|---|---|---|
| Notes and check | $34,580 | |
| Eliminations | 3,480 | |
| | 31,100 | |
| Cost of deed | 1,275 | 32,375 |
| Ordinary income | | $47,625 |

The respondent determined that of the ordinary income not less that $26,933.77 represented interest, and not less than $20,691.23 represented reimbursements for

attorneys' fees and legal expenses paid by taxpayer and deducted by him in prior years.

The Tax Court found from the facts surrounding the "Settlement Agreement" both Schwartz, the taxpayer, and Rosenblum intended that $64,000 of the amount paid in settlement included the full amount of the Rosenblum notes and interest thereon. It held that $31,100 out of the $64,000 constituted a return of capital, that $29,420 constituted interest due on said notes, and that the balance $3,480 was also taxable as ordinary income in the absence of proof that the commissions charged on, and interest unpaid on said notes had previously been reported by the taxpayer.

The Tax Court further found that taxpayer, in accepting said settlement of $80,000, received the sum of $11,000 on his claim growing out of the payment by him as guarantor of a mortgage by Rosenblum. Of this amount it decided that $9,000 was received by taxpayer as principal in his guaranty claim, and $2,000 represented interest on said claim. In connection with this $9,000 it was resolved that because the record made no showing as to whether or not taxpayer had ever deducted that sum for income tax purposes, it must assume that he had made such deduction and that the $9,000 realized in 1942 was taxable as ordinary income.

The remaining $5,000 received by taxpayer in said settlement was determined by the Tax Court to be a payment by Rosenblum, for final settlement of taxpayer's claim of title to the Neisner property and an acceptance thereof by taxpayer.

The evidence in the Tax Court consisted of a stipulation of facts; the testimony of the taxpayer, and of the attorney who represented Rosenblum in the settlement with the taxpayer.

■ The facts in this case are involved and complicated, but the Tax Court, in its unpublished memorandum opinion, has analyzed them fully and fairly. We find that its conclusions are based upon substantial evidence, and we consider our-

selves bound by them. We are unable to say that they are clearly erroneous.

The taxpayer continues to urge on this appeal that the assignment of the lease to Neisner Brothers, dated April 30, 1931, together with the "Supplemental Agreement" of July 22, 1931, made him the owner of the property known as the Neisner Building. With this contention we are unable to agree.

■ Whether or not these assignments constituted a conveyance of an interest in the property must, of course, be decided under the laws of Illinois, where the parties reside and where the property is located.

The only authoritative Illinois case cited by taxpayer to support his contention is Barnes v. Northern Trust Co., 169 Ill. 112, 48 N.E. 31.

■ The Barnes case merely held that since 1874 (should be July 1, 1873), the year in which Sec. 14 of Chapter 80, Smith Hurd's Ill. Ann. Statute was enacted, the assignee of the leasor's interest under a lease should have the same remedies by entry, action or otherwise for the non-performance of any agreement or for the recovery of any rent or the doing of any waste or other cause of forfeiture as the lessor might have had if no such assignment had been made. In other words, prior to the statutory enactment of 1874 (1873) the rule at common law had prevailed in Illinois. Under that rule a lease was not assignable so as to give the assignee of a lessor's interest an action for rent against the tenant since there was no privity of contract between them without attornment of the lessee.

As we have pointed out, the assignments here in question merely assigned the interest of the assignors in the lease as security for payment of the debt secured by the second mortgage. It did not purport to convey any interest in the land itself. As a matter of fact, it provided that the assignor and his wife were to retain possession of the premises unless and until default was made and declared. Lum v. Commissioner, 3 Cir., 147 F.2d 356, cited by taxpayer, affords no support to his contention that the assignment vested him with an interest in the property itself.

■ As to the finding by the Tax Court that $11,000, of the sum received by taxpayer in settlement, constituted repayment with interest of a sum claimed to have been expended by taxpayer as guarantor of obligations of Rosenblum, the Court assumed that taxpayer had deducted such sum in his prior tax returns, and directed that it be taxed as ordinary income. It is now admitted by the Commissioner, in the brief filed in his behalf, that the taxpayer was not properly on notice that this particular sum was involved. The taxpayer declares that he can prove that he did not deduct the amount in prior tax reports. The Commissioner concedes that, in all fairness, the case should be remanded in this connection so as to give taxpayer the right to prove that he did not make such deductions, and that therefore the amount is not taxable as ordinary income.

We believe that in all other respects the findings of the Tax Court are correct and supported by substantial evidence.

The decision of the Tax Court is affirmed except as to the $9,000, alleged to have been advanced by taxpayer as guarantor of notes by Rosenblum, which it directed to be taxed as ordinary income; as to this finding its decision is reversed and the cause is remanded to give taxpayer an opportunity to establish that the sum was not deducted by him in prior income-tax returns.