ARTHUR T. GALT, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 27844, 29528. Promulgated February 27, 1953.

*Walter W. Ross, Esq., Gerhard E. Seidel, Esq.,* and *Elroy C. Sandquist, Jr., Esq.,* for the petitioner.
*Thomas A. Steele, Jr., Esq.,* for the respondent.

896

## OPINION.

### I.

Opper, *Judge:* Reduced to its simplest terms the first question is whether rent paid for the use of property owned by petitioner under a lease in which he was the lessor is taxable entirely to him or in some part to his adult sons because of its assignment by him and because of the provision of the lease authorizing the payment of that part of the rent to them. It is beyond question that income is taxable to the earner, *Lucas* v. *Earl*, 281 U. S. 111, and that the income from property is taxable to the owner of the property which gives rise to the income. *Helvering* v. *Horst*, 311 U. S. 112. And petitioner's argument cannot in fact be viewed as disputing these basic propositions.

He insists, it is true, that the arrangement for the payment of rent to the sons was irrevocable, and that they were entitled to enforce

its collection. But in this respect the case is no different from *Helvering* v. *Horst*, *supra*. There, to the contention that a separate property interest was transferred to the donee by the assignment of an interest coupon of which the donor then lost control, see the opinion below (C. A. 2), 107 F. 2d 906, the Supreme Court replied (311 U. S. 120):

Nor is it perceived that there is any adequate basis for distinguishing between the gift of the interest coupons here and a gift of salary or commissions. The owner of a negotiable bond and of the investment which it represents, if not the lender, stands in the place of the lender. When, by the gift of the coupons, he has separated his right to interest payments from his investment and procured the payment of the interest to his donee, he has enjoyed the economic benefits of the income in the same manner and to the same extent as though the transfer were of earnings and in both cases the import of the statute is that the fruit is not to be attributed to a different tree from that on which it grew. * * *

And see *Loretta McKenna Richards*, 19 T. C. 366.

We conceive that the true impact of petitioner's contention is that here as in *Blair* v. *Commissioner*, 300 U. S. 5, a property interest was assigned to the donee from which there arose the income in dispute. In this position we are unable to concur for three reasons.

In the first place, the suggestion that under Illinois real property law the owner of a mere interest in rents succeeds to something denominated by petitioner a "chattel real" runs counter to such basic concepts as that the Federal income tax statutes must be construed so as to be of general application and not to differentiate comparable situations merely because of peculiarities in local terminology;[2] and also that anticipatory arrangements, no matter how ingeniously and elegantly contrived, are not to be disposed of by attenuated subtleties. *Harrison* v. *Schaffner*, 312 U. S. 579; *Lucas* v. *Earl*, *supra; Corliss* v. *Bowers*, 281 U. S. 376. The same principles as those announced in *Lucas* v. *Earl*, *supra*, and *Helvering* v. *Horst*, *supra*, have been applied to assignments of rental income where title to the property remained in the assignor. *Samuel V. Woods*, 5 B. T. A. 413; *Julius Rosenwald*, 12 B. T. A. 350, affd. (C. A. 7) 33 F. 2d 423, certiorari denied 280 U. S. 599; *Ward* v. *Commissioner*, (C. A. 9) 58 F. 2d 757 (a 99-year lease); *Oscar Mitchell*, 27 B. T. A. 101; *Arthur H. Van Brunt*, 11 B. T. A. 406; and particularly *Midwood Associates, Inc.* v. *Commissioner*, (C. A. 2) 115 F. 2d 871 (a 21-year lease); and *Lum* v. *Commissioner*, (C. A. 3) 147 F. 2d 356, both decided after the *Horst* case.

*Estate of Henry N. Brinsmade*, 39 B. T. A. 195, the sole case cited appearing to be in conflict with these authorities, was not only decided

[2] *Burnet* v. *Harmel*, 287 U. S. 103; *Lyeth* v. *Hoey*, 305 U. S. 188; *Thomas* v. *Perkins*, 301 U. S. 655; *United States* v. *Pelzer*, 312 U. S. 399; *Lum* v. *Commissioner* (C. A. 3) 147 F. 2d 356.

prior to *Helvering* v. *Horst, supra,* but relies partly on the fact that "the taxpayer here obviously intended to convey to his sons one-half of his entire interest in the property," there having been a subsequent grant and release to the assignees of "an undivided one-half part in all his [petitioner's] right, title and interest in the plot of land * * *."

*Blair* v. *Commissioner, supra,* is grounded on the very aspect of such a transaction which is absent here. That taxpayer's interest consisted solely of an equitable title which the court considered to be transferred *pro tanto* when the rights to the income from it were assigned. "In the circumstances of that case the right to income from the trust property was thought to be so identified with the equitable ownership of the property from which alone the beneficiary derived his right to receive the income and his power to command the disposition of it that a gift of the income by the beneficiary became effective only as a gift of his ownership of the property producing it. Since the gift was deemed to be a gift of the property, the income from it was held to be the income of the owner of the property, who was the donee * * *." *Helvering* v. *Horst, supra.* Cf. *Visintainer* v. *Commissioner,* (C. A. 10) 187 F. 2d 519, certiorari denied 312 U. S. 858.

It requires no intricate analysis to differentiate that situation from the present one. Blair had nothing left of that portion of his equitable estate which he assigned. Petitioner has retained everything except the right to receive fractions of the income for a term of years.

Nor need we speculate on what would be the situation had petitioner assigned the entire lease and all his rights thereunder as landlord, which might, as in *Blair,* be construed as conveying an interest in the fee. See *Bing* v. *Bowers* (D. C., S. D., N. Y.) 22 F. 2d 450, affd. per curiam (C. A. 2) 26 F. 2d 1017. The short answer is that no more than in that case did he actually do so. Cf. *Lum* v. *Commissioner, supra.*

Second, we think petitioner mistaken in his interpretation of the scope of the Illinois authorities upon which he relies. That the donees might have been vested with irrevocable rights of collection would have, as we have seen, no dispositive effect in the present situation. That was also true in the *Horst* case. But such appears to be the limit of the purpose and effect of the Illinois statute.

A basic distinction in the rights and property acquired under a lease must first be drawn between those of the lessee on the one hand and those of the owner of the fee or lessor on the other. As to the latter, the income is derived from the underlying property and the lease represents "nothing more than * * * the right to future rental payments * * *." *Hort* v. *Commissioner,* 313 U. S. 28. The lessee, however, obtains an interest in real property by force of the terms of the lease, *Stubbings* v. *Village of Evanston,* 136 Ill. 37, 26 N. E. 577,

of which he had not previously been possessed. And cf. *Hort* v. *Commissioner, supra*, with *Walter H. Sutliff*, 46 B. T. A. 446, and *Isadore Golonsky*, 16 T. C. 1450, affd. (C. A. 3) 200 F. 2d 72.

Without relating the details of the statutes and cases upon which petitioner relies, all of which have been exhaustively examined, the effect of the Illinois provisions can be summarily gathered by reference first to *Schwartz* v. *Commissioner*, (C. A. 7) 185 F. 2d 760:

> prior to the statutory enactment * * * the rule at common law had prevailed in Illinois. Under that rule a lease was not assignable so as to give the assignee of a lessor's interest an action for rent against the tenant since there was no privity of contract between them without attornment of the lessee.
>
> As we have pointed out, the assignments here in question merely assigned the interest of the assignors in the lease as security * * *. *It did not purport to convey any interest in the land itself.* [Emphasis added.]

And then to *Barnes* v. *Northern Trust Co.*, 169 Ill. 112, 48 N. E. 31:

> In Fisher v. Deering, 60 Ill. 114, we held that at ancient common law a lease, like any other agreement or chose in action, was not assignable, so as to give the assignee an action against the tenant; that, by the 32 Hen. VIII c. 34, § 1, the assignee of the reversion became invested with the rents, and where the tenant attorned to him he might maintain an action of debt to recover subsequent accruing rents; that although the assignment of the reversion created a privity of estate between the assignee and the tenant, still it required an attornment to create such a privity of contract, even under 32 Hen. VIII, as would authorize the assignee to sue for and recover rent in his own name * * *

But the effect of section 14 of chapter 80, Illinois Revised Statutes, was to dispense with the requirement of attornment so that the assignee had "the same remedies, by action or otherwise, for nonperformance of any agreement in the lease for the recovery of rent or other cause of forfeiture, as the lessor might have had * * *." *Barnes* v. *Northern Trust Co., supra.*

It is questionable, even so, whether an assignment of less than the whole cause of action is effective even under the local law. Thus in *Adams* v. *Shirk*, (C. A. 7) 117 F. 801:

> The Illinois statute * * * preserves to grantees * * * the same remedies for recovery of rent that the lessor had. It is conceivable that if Elbert W. Shirk had conveyed in severalty to various grantees different parcels of the demised land, a grantee might not enter upon his portion for breach of a covenant made with the owner of the whole.

Cf. *Crosby* v. *Loop*, 13 Ill. 625, 14 Ill. 330.

If, as petitioner contends, the ancient rule treating rents as an incorporeal chattel real were actually still effective in this jurisdiction and at this time, but see 1 Tiffany, Landlord and Tenant, sec. 180 (c), cf. *Wineman* v. *Hughson*, 44 Ill. App. 22, then the consequence would be that as an interest in land they could be transferred only by grant,

that is, by an instrument under seal duly acknowledged and delivered.[3] If that were so here, then no valid transfer of any interest in the rents has ever occurred. Tiffany, *op. cit.*

But, in any event, that uncollected rents do not by themselves represent an interest in the property for the occupation of which the rent is paid appears not only from these authorities and from the purpose of the enactments but from the fact that as in other states, Tiffany, Law of Real Property, sec. 884, past due rents still pass to the executor while those yet to accrue follow the title to the real property and belong to the heirs because of their ownership. See *Green* v. *Massie*, 13 Ill. 363; *Dixon* v. *Niccolls*, 39 Ill. 372. Whether under a gratuitous assignment such as this,[4] without a physical or symbolic delivery of the lease or any other token of the gift,[5] the sons acquired an irrevocably enforceable interest at all, and whether, if so, the enforcement could be against the tenant or only against the assignor, see *Crosby* v. *Loop, supra,* we need not now decide. Assuming they had such rights, so did the wives in *Lucas* v. *Earl, supra; Helvering* v. *Clifford,* 309 U. S. 331; and *Commissioner* v. *Tower,* 327 U. S. 280; and the son in *Horst.* And see, e. g., *United States* v. *Joliet & Chicago R. Co.,* 315 U. S. 44. Even if enforceability, as distinguished from a separate property coterminous with the fee, was what the sons obtained, it would thus not suffice.

Finally, this brings us to the third proposition that the whole structure of the lease, and of petitioner's dealings with it, shows a retention of control and a recognition of petitioner's sole status as landlord which is at war with any such assumption as that the sons received anything of an ascertainable, independently enforceable, and still less of an irrevocable nature.

The fixed rent established by section 1 of the lease was at all times payable to petitioner. So, in terms, was the additional percentage rental, covered by the succeeding section, in even more explicit lan-

---

[3] For example, for the purposes of Chapter 30, Illinois Statutes (Smith-Hurd), "real estate" is defined in section 38 "as co-extensive in meaning with 'lands, tenements and hereditaments' and as embracing all chattels real." Section 28 provides that "deeds * * * and other instruments relating to or affecting the title to real estate in this State shall be recorded in the county in which such real estate is situated * * *." And section 20 provides that "Deeds * * * or other writings of or relating to the sale, conveyance or other disposition of real estate or any interest therein * * * may be acknowledged or proven before some one of the following * * *."

[4] *Rosenwald* v. *Commissioner, supra;* see *Chandler* v. *Illinois National Bank & Trust Co. of Rockford,* 290 Ill. App. 509, 8 N. E. 2d 705; *Meyer* v. *Meyer,* 379 Ill. 97, 39 N. E. 2d 311.

[5] *Rosenwald* v. *Commissioner, supra;* see *Telford* v. *Patton,* 144 Ill. 611, 33 N. E. 1119; *Millard* v. *Millard,* 221 Ill. 86, 77 N. E. 595; *Baldwin* v. *Peoria Star Co.,* 317 Ill. App. 537, 47 N. E. 2d 127.

guage, the agreement being "to pay the Lessor * * *." [6] Section 4 merely incorporated the direction to the lessee to pay "any sums that may be due under the provisions of Section 2" in fractions, that is, one-fifth to each of the three sons. The covenants of the lease—including this one—are expressly made "with the said lessor," who is, of course, petitioner. And, as if to underscore the relationship between petitioner and the tenant obligated to make the payments, section 42 provides that "Lessee shall be entitled to regard Arthur T. Galt [petitioner] alone as Lessor for all purposes, and said Arthur T. Galt or his successor or assignee [singular] shall have full power to take all action required under this lease * * * and make amendments hereto without the participation of [petitioner's] * * * sons * * *."

Under such circumstances the assignees would, at most, "as third parties beneficiary" be entitled to "enforce payment from the lessee directly to them * * *." *Samuel V. Woods, supra.*

Even this becomes doubtful when the gratuitous character of the assignment is considered, coupled with petitioner's manifold prerogatives as landlord specifically retained under the lease and including not only the power of amendment already mentioned but also the retention of title to structures placed on the property by the tenant, the authority under section 6 to have half of all taxes paid by the lessee charged against the percentage payments of section 2 (notwithstanding this was not conceived of as half the rent), the authority under section 32 to designate the persons to whom and the place where payments of rent should be made, and the power to terminate the lease for any of the extensive reasons catalogued in section 26. By the same token, but conversely, such obligations as those imposed by the Covenant of Quiet Enjoyment under section 23, and the grant to the tenant of the use of easements, appurtenances, and buildings under section 5 were obviously the responsibility of petitioner since he alone owned the property. As will later appear from the discussion of the last issue, even the cost of legal services appears to have been undertaken by him without any effort to charge a proportionate share against the sons.

Although here was no trust and no corresponding fiduciary obligation undertaken by petitioner, we may borrow the language of *Helvering* v. *Clifford, supra,* that under such circumstances petitioner

---

[6] "Examining the lease itself without considering it together with the letters * * * there is no question, nor has petitioner ever contended that there was a question regarding the fact that at the conclusion of the first three sections of the lease the sums due under the percentage clause of the lease were due to the petitioner. However, Section 4 of the lease changed this situation and in the first sentence of that section petitioner gave up his right to 60% of the sums due under the percentage clause of the lease to his sons. The second sentence of that section makes the petitioner's giving up of his rights to his sons as contained in the first sentence of Section 4 irrevocable over the full term of the lease." [Petitioner's reply brief.]

cannot complain if "for the purpose of taxation he is treated as owner altogether."

One may speculate as to the effect, absent the terms of section 4, of petitioner's contemporaneous letter to his sons. It purports to assign to them the same portion of the income as is authorized under the lease to be paid to them. Without pausing to determine whether that assignment in turn is enforceable, see *Chandler* v. *Illinois Nat. Bank & Trust Co. of Rockford*, 290 Ill. App. 509, 8 N. E. 2d 705, it seems evident that it accomplishes no more than the transfer of the coupon in the *Horst* case, and that the assignment itself is a mere adjunct of the direction to the tenant contained in the lease. It may, however, assist in assessing the flavor of the "gift" if we repeat a few of the restrictions on the transfer which petitioner himself recognized: "There are also many provisions for cancellation and termination of the lease in the event of certain happenings * * *" and "There are also many provisions in the lease which provide for contingencies that may arise and diminish the income * * *." One of these, of course, was petitioner's power of amendment, and another his inherent rights as landlord to eject the tenant.

For all of the reasons stated, we conclude that petitioner's effort to avoid the burden of the tax on income, collectible by him until he chose to give it away, must fail. On this issue the deficiency is sustained.

## II.

We are confronted next by respondent's claim that, as a result of petitioner's assignment to his sons, he owes a gift tax for 1946. In his notice of deficiency, respondent determined the deficiency in gift tax to be $68,079. In a statement attached to the notice of deficiency, he declared that the value of the gifts to the sons "is held to be $337,500 on the basis of information now of record, or in the alternative the gift to the three sons in 1946 is the 60% of the percentage income, or $23,923.83, the amount paid to the sons under the lease." The petition filed herein alleged error by respondent in valuing the gifts as aforesaid, and also alleged that "The Commissioner erred in failing to determine that the fair market value on February 26, 1946, of the 20% interest given to each of petitioner's three sons in the sums due under the * * * lease on account of wagering is zero." In a Federal gift tax return filed for 1946, petitioner, where the return required a valuation of gifts, answered "No value." At the trial, however, both parties shifted their positions. Assuming as his premise the contention that the rents payable to the sons each year remain taxable as petitioner's income, respondent at the trial expressly abandoned the primary position taken in connection with the notice of

deficiency, namely, that gifts valued at $337,000 were made in 1946, and relied only on the alternative position described in the extract quoted above. At the trial he stated that he no longer contended that petitioner's gifts were made at the time of the assignment; as to that contention he conceded error, and he assumed the basic position that petitioner made gifts to his sons each year as, and in the amounts that, the rentals were paid to them year by year. Respondent now must be taken to admit, therefore, that a gift tax deficiency for 1946 in the amount of $68,079 is excessive, and that a deficiency is owing for that year only to the extent of the tax due on gifts valued at $23,923.83. However, somewhat incongruously with his "abandonment" of the contention that gifts were made at the outset when the assignment was executed, respondent apparently also maintains that, if gifts were made at that time, they were gifts which then had no ascertainable value. On the other side, petitioner now insists that gifts were made in 1946, and that they were made once and for all when the sons were given an interest in the rents; that the gifts, as then made, can be valued and that their total value was $34,090; and that petitioner owes a gift tax for 1946 based on that valuation.

Because of the concessions of the parties, and because only the year 1946 is before us in this proceeding, it becomes unnecessary to consider when, and of what value, the gift was made. Respondent now seeks a gift tax for 1946 based on a maximum valuation of $23,923.83. That is all the Government is asking for, and it is therefore not entitled to an award in a greater amount. Accordingly, since petitioner admits that he owes a gift tax based upon a gift of $34,090, and since respondent now claims to be entitled only to a tax based upon a gift in the amount of $23,923.83, we must hold that the latter amount is the measure of petitioner's gift tax liability for 1946.

### III.

The dispute between the parties concerns, finally, the deductibility in 1946 of a fee paid by petitioner in that year to an attorney, Daniel D. Tuohy. Tuohy had done work for petitioner for some years prior to 1945. In that year he was retained by him to effect a lease of the Fair Grounds property for harness racing. He began by studying state legislation authorizing harness racing in Illinois, as to which he advised petitioner. Then he entered into negotiations with various prospective lessees, with a number of whom he was unable successfully to conclude a transaction, until the matter ultimately was closed with the lease to Maywood Park in February of the following year. Tuohy performed other legal services for petitioner, both in respect of the

Fair Grounds property and other property, and for all this work he charged petitioner a lump sum fee of $45,000. Petitioner contends that the entire fee is deductible in 1946 as a nonbusiness expense under section 23 (a) (2)[7] of the Code. Respondent amortized $44,000 of this amount over the 20-year period of the lease to Maywood Park, and allowed a proportionate deduction for 1946. The remaining $1,000, representing by agreement of the parties $200 attributable to "gift tax matters" and $800 attributable to "zoning matters," was disallowed entirely by respondent.

We think respondent was correct in completely disallowing deduction for these two items aggregating $1,000. Tuohy advised petitioner as to gift tax liability resulting from the assignment to the sons, prepared his gift tax return, and represented him before the Bureau of Internal Revenue. His fee for this work is a personal expense and nondeductible under section 24 (a) (1)[8] of the Code. Cf. *Lykes* v. *United States*, 343 U. S. 118; *Cobb* v. *Commissioner*, (C. A. 6) 173 F. 2d 711, certiorari denied, 338 U. S. 832; Treasury Regulations 111, section 29.23 (a)–15. The "zoning matters," for work on which $800 of the fee has been allocated by the parties, apparently related to rezoning of the Fair Grounds property to permit parking and the sale of certain beverages there. There is nothing in the evidence to show that these were not matters affecting the property beyond the 20-year term of the lease. On the record they appear to be capital expenditures, not amortizable because indefinite and undeterminable in the duration of their consequence, and recoverable through addition to the basis of the property rather than through periodic deduction.

The largest part of the remaining $44,000 of Tuohy's fee was attributable to his efforts to obtain a lease of the property for harness racing. Petitioner contends that Tuohy's charge in this connection must be split into two components, one representing payment for work done only in negotiating and consummating the lease to Maywood Park, and the other representing payment for services rendered in negotiating with other prospects who failed to lease the property.

---

[7] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

(a) EXPENSES.—

 *       *       *       *       *       *       *

(2) NON-TRADE OR NON-BUSINESS EXPENSES.—In the case of an individual, all the ordinary and necessary expenses paid or incurred during the taxable year for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income.

[8] SEC. 24. ITEMS NOT DEDUCTIBLE.

(a) GENERAL RULE.—In computing net income no deduction shall in any case be allowed in respect of—

(1) Personal, living, or family expenses, except extraordinary medical expenses deductible under section 23 (x);

Petitioner concedes that the first component is to be amortized over the 20-year term of the lease; the second, however, is asserted by him to be entirely deductible in 1946.

We are unable to agree with petitioner because we find the evidence insufficient to support his position. He argues that the "successful" and "unsuccessful" efforts were separable, whereas we think the fact was just the opposite. Tuohy was hired to help attain a single objective—lease of the premises—to which he applied himself with singleness of purpose, and for his efforts directed to this one objective he submitted a single charge. Tuohy's situation here was very much like that of the broker in *Commissioner* v. *Gordon*, (C. A. 2) 172 F. 2d 864, affirming per curiam 10 T. C. 772, whose services in selling a block of stock were held, in determining the period over which the commission for making the sale was to be spread under section 107 of the Code, to include both his unsuccessful and successful efforts. In fact, the lease to Maywood Park, at least in part, grew out of these "unsuccessful" efforts; thus, Johnson who represented the Maywood Park interests was introduced to Tuohy by persons acting for another prospective lessee with whom Tuohy was engaged in otherwise unsuccessful negotiations. Neither in Tuohy's bill to petitioner, nor in any statement made by him prior to commencement of this proceeding, did he ever indicate that he considered either his work or his charge to be divisible as petitioner contends. His charge was unitary, as was his work as well. Because the expenditure here is not divisible, *Watson P. Davidson*, 27 B. T. A. 158, 159, and *Sibley, Lindsay & Curr Co.*, 15 T. C. 106, 110, are not in point.[9]

As to most of the remainder of Tuohy's services for which the $45,000 fee was charged, petitioner has failed either to establish their nature sufficiently to show that they were not capital expenditures, or else the evidence shows that they were such expenditures and therefore were not deductible wholly in one year: (1) Arrangement made for water to be supplied to the premises. This is a capital item, of benefit to the property at least for the life of the lease, and perhaps

[9] Moreover, even if we were to assume that Tuohy's services were divisible, petitioner has failed to establish a basis on which we can allocate the fee to the two categories of effort for which he contends. Petitioner proposes only that an allocation be made on the basis of the number of hours of work devoted by Tuohy to each of the two alleged classes. But this, on the evidence, is an unreliable guide to Tuohy's charge for his services because, first, he kept no records of the time spent on each of these classes and his testimony in this regard consisted of guessing speculative to a point which left us with considerable doubt even as to its approximate accuracy; and, secondly, the amount of his charge was not determined by the factor of time alone but was also influenced by other considerations, as, for example, by whether or not his efforts produced the result for which he was retained. Not only has petitioner failed to show the nature of these other considerations, but he has also failed to show the weight given to them by Tuohy in fixing the fee. Cf. *Sayers F. Harmon,* 4 T. C. 335, 347–348.

912

beyond. Cf. section 24 (a) (2)[10] of the Code; Treasury Regulations 111, section 29.24–2. (2) "Division of Taxes." No detail as to this item appears in the record, and we are unable to determine whether it involved a matter only of significance for the one year 1946 or whether it was of importance to the premises for a longer period. (3) Examination of policies under the lease, and of certain contracts entered into by the lessee. Certain policies of insurance obtained by or for Maywood Park were required under the lease to receive petitioner's approval, and in this connection Tuohy examined insurance policies. The evidence is incomplete as to what policies he examined and their nature, terms, and duration, and fails to show that these policies were of no benefit beyond 1946. As to the contracts examined, the evidence is also insufficient, indicating no more than that each of them involved an expenditure of more than $5,000. (4) Change in zoning of property not included in the lease. This was a capital item of importance to the property beyond the one year. Here, too, the record is lacking in clarity, and is ambiguous as to the nature and effect of the change made. (5) Condemnation proceedings involving property entirely separate from the Fair Grounds property. What happened here is left unexplained by the record. If property of petitioner were condemned, and he received an award therefor, legal expense in connection therewith would be a capital expenditure which diminished the proceeds recovered. Cf. *Isaac G. Johnson & Co.* v. *United States*, (C. A. 2) 149 F. 2d 851, 852; *Williams* v. *Burnet*, (C. A. D. C.) 59 F. 2d 357; *William Justin Petit*, 8 T. C. 228, 236–237. The record does not show such an award in 1946. No reason appears for deducting in that year, as a current expense or otherwise, legal expense relating to the condemnation. (6) "Special Assessment Bonds." The only information in the record as to these bonds is that they had nothing to do with the Fair Grounds property. The record is insufficient to sustain the claimed deduction in 1946.

As to these services, moreover, petitioner's sole method of allocating Tuohy's fee between them is on the basis of time spent. Here we find the same objections to application of this method as we mentioned (footnote 9, *supra*) in respect of petitioner's apportionment of part of the fee between the "successful" and "unsuccessful" efforts in obtaining a lease. There were no records kept as to time worked on

---

[10] SEC. 24. ITEMS NOT DEDUCTIBLE.

(a) GENERAL RULE.—In computing net income no deduction shall in any case be allowed in respect of—

\*      \*      \*      \*      \*      \*      \*

(2) Any amount paid out for new buildings or for permanent improvements or betterments made to increase the value of any property or estate, except expenditures for the development of mines or deposits deductible under section 23 (cc) ;

these items, and Tuohy's testimony in this regard was largely conjecture which left us with an impression that it was of dubious worth; in addition, as we said before, his fees were not fixed just on the basis of time spent but took additional considerations into account, so that time alone was no measure of his charges. And, concerning the other considerations, he has failed to prove what they were and how much weight he gave them in fixing his fee (see footnote 9, *supra*).

Finally, the $45,000 fee was paid for Tuohy's services in examining data showing business done at the track after it opened. The objections just described apply as well to allocation of part of the fee to these services. Tuohy's charge for this work may or may not have been a current expense, but it represented only a very small part of the services for which the $45,000 was charged, and the record leaves us with no sufficient basis on which to make a reasonably accurate apportionment of part of the fee to this part of the work. Moreover, respondent did allow petitioner a deduction based upon amortization of $44,000, which may well have included some nondeductible capital items that should not have been amortized at all. Accordingly, we cannot say that the over-all amount allowed by respondent was not sufficient to absorb this last small item, even if some deduction were proper with respect to it.

We therefore conclude that petitioner has failed to prove that respondent erred in confining petitioner's deduction for 1946, in respect of Tuohy's fee, to an amount based on amortization of $44,000 of the fee over the term of the lease.

Reviewed by the Court.

*Decisions will be entered under Rule 50.*

RAUM, *J.*, concurs in the result.