DRAKE UNIVERSITY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 1388-63. Filed April 14, 1965.

*A. Roger Witke,* for the petitioner.
*Ronald M. Frykberg,* for the respondent.

OPINION

BRUCE, *Judge:* Respondent determined a deficiency in the income tax of the Butters Realty Co. for the year 1960 in the amount of $283.35. The sole issue is whether rental payments made by a sublessee to a third party are income to the sublessor.

All of the facts have been stipulated and the stipulation of facts and exhibits attached thereto are found accordingly.

The petitioner is a nonprofit corporation organized and existing under the laws of the State of Iowa and is located in Des Moines, Iowa.

Prior to its dissolution on September 24, 1962, Butters Realty Co. (hereinafter referred to as Realty) was a corporation organized and existing under the laws of the State of Iowa. S. D. Butters (hereinafter referred to as Butters) was its sole shareholder. Its Federal income tax return for the taxable year 1960 was filed with the district director of internal revenue at Des Moines, Iowa.

The principal asset of Realty was a lease of certain property located in Des Moines executed July 26, 1940, and modified August 25, 1953, from the trustees of the Frederick M. Hubbell Estate. The property subject to this lease was subleased by Realty to the Young Men's Christian Association of Des Moines, Iowa (hereinafter referred to as the YMCA), on September 1, 1956.

Under the terms of this sublease, the YMCA agreed to pay all rental and other payments required to be made by Realty under the lease, to

be bound by the same responsibilities, rights, privileges, and duties as Realty under the lease, and to pay to Realty during the term of the lease $660 per month as long as either Butters or his wife, Aileen B. Butters, were living and $400 per month thereafter until the death of their daughter, Jo Ann A. Butters. The sublease further provided that the YMCA would (1) pay all costs of repair, improvements, and expenses of taking care of the property; (2) hold Realty harmless from liability in connection with the operation and maintenance of the property; (3) insure the property against fire, lightning, and tornado; (4) maintain boiler and public liability insurance; (5) perform obligations set forth in various subleases on the property; and (6) keep Realty indemnified against all actions, claims, and demands with respect to covenants, conditions, and stipulations in the lease.

In July 1957, after Jo Ann had married Edwin E. Segall, Butters created an inter vivos trust under which he transferred his property, including his stock in Realty, to the Central National Bank & Trust Co. of Des Moines, Iowa (hereinafter referred to as Central), as trustee. The trust instrument provided, *inter alia*, that upon Butters' death the sum of $1,500 was to be paid to Jo Ann and $2,700 to certain other persons. The remainder of the property was to be retained for investment and the income accumulated during Edwin's life. If Edwin predeceased Jo Ann, the sum of $9,000 per annum was to be paid to her as long as she lived. After Jo Ann's death, the corpus and accumulations were to be paid to petitioner.

Aileen died on November 28, 1956. Butters died testate on April 15, 1958. Jo Ann survived him. Butters' will provided that his personal effects and household goods were to go to Jo Ann and the remainder of his estate to the inter vivos trust.

After Butters' death, Jo Ann commenced several actions against Central and petitioner. Certain of these actions were for the purpose of setting aside the probate of Butters' will and declaring the inter vivos trust invalid.

The various suits brought by Jo Ann were settled by agreement on November 2, 1960. The agreement provided, in part, that Central would dissolve Realty, close the trust, and distribute the net assets of the trust to petitioner. It further provided, in part, that:

3. Central, Segall and Drake agree to take necessary steps to cause rental payments after this date by Y.M.C.A. to be equally divided between Segall and Drake, and to cause separate rental checks to be mailed to Segall and Drake for the balance of the Y.M.C.A. lease.

A supplemental agreement executed on November 14, 1960, provided that Central, instead of dissolving Realty, would transfer the stock of Realty to petitioner and that petitioner would dissolve Realty.

On November 21, 1960, the District Court of the State of Iowa in

and for Polk County entered an order giving effect to the settlement agreement, as modified. This order stated, in part, that:

an undivided one-half interest in and to all rental income accruing from a certain Lease with the Young Men's Christian Association of Des Moines, Iowa, should be paid to the said JoAnn Butters Segall, * * *

During each of the months of November and December 1960 the Des Moines YMCA paid one-half of the $400 monthly rental payment to Jo Ann and the other one-half to petitioner. No payments of this rental were made to Realty.

In its 1960 income tax return Realty did not include as rental income the two rental payments on the YMCA sublease totaling $400 paid to Jo Ann in the months of November and December 1960. Neither the lease and modification nor the sublease from Realty to the YMCA was ever assigned by written assignment to petitioner.

On September 24, 1962, Realty was dissolved and all of its assets were transferred to petitioner. All debts and liabilities of Realty were paid or assumed by petitioner.

In his statutory notice of deficiency dated January 31, 1963, respondent determined that Realty's rental income in 1960 included the $400 paid by the YMCA to Jo Ann in November and December.

The two rental payments totaling $400 paid by the YMCA to Jo Ann in November and December 1960 constitute income taxable to Realty.

The sole issue is whether the rental payments made by the YMCA to Jo Ann in November and December 1960 represent taxable income to Realty.

It is well established that a taxpayer may not escape the income tax by anticipatorily assigning income which he otherwise would have a right to receive. *Harrison* v. *Schaffner*, 312 U.S. 579; *Helvering* v. *Horst*, 311 U.S. 112; *Lucas* v. *Earl*, 281 U.S. 111. If he retains the source of the income, the tree, he is taxed on the income from that source, the fruit, whether he receives the income or another at his behest receives it. *Galt* v. *Commissioner*, 216 F. 2d 41 (C.A. 7), affirming on this issue 19 T.C. 892, and cases cited therein; *Lum* v. *Commissioner*, 147 F. 2d 356 (C.A. 3). The fact that he irrevocably directs that the income be paid to another is immaterial. *Helvering* v. *Horst*, *supra; Galt* v. *Commissioner*, *supra*. He realizes the economic gain from the income when he directs its disposition in a manner which serves his own ends or satisfies his own wants. *Commissioner* v. *Sunnen*, 333 U.S. 591; *Helvering* v. *Horst*, *supra*.

The trust agreement executed by Butters in 1957 did not affect the ownership of the sublease between Realty and the YMCA. It merely transferred the stock in Realty to Central as trustee with directions as to the manner in which the rental income to be received by Realty should be distributed. Nor did the settlement agreement between

Jo Ann, Central, and petitioner change the ownership of the sublease. As in the case of the trust agreement, it transferred the stock in Realty which still owned the sublease and directed the manner in which the rental income should be distributed. In addition, it authorized Drake University to which the stock was to be transferred to dissolve Realty. Until Realty was dissolved and all its assets, including the sublease, were transferred to petitioner on September 24, 1962, Realty remained the owner of the sublease. Consequently, the rental income paid to Jo Ann in November and December 1960, even though paid directly to Jo Ann pursuant to the directions contained in the settlement agreement, constituted taxable income of Realty.

Petitioner relies upon the *Galt* and *Lum* cases in arguing that Realty is not taxable on the rental payments to Jo Ann since it had no control over the disposition of the income from the sublease after the court ordered the rents paid to Jo Ann and petitioner in accordance with the settlement agreement. However, both these cases hold that a taxpayer who assigns rents under a lease but retains ownership of the property which is the subject of the lease is taxable on the income from the lease, even though by the assignment he divests himself of control over the disposition of the income. Petitioner's reliance on these cases is erroneous.

Petitioner argues in the alternative that the settlement agreement effected an equitable assignment of the sublease by Realty to Jo Ann and petitioner.

This Court has no jurisdiction to grant equitable relief. *Lorain Avenue Clinic*, 31 T.C. 141; *Edward D. Lacey*, 41 T.C. 329. However, State law determines the rights or interests created in property and Federal law controls only the manner in which these rights and interests are taxed. *Edward D. Lacey, supra.*

Under Iowa law, any words or transaction which show an intention on the one side to assign and an intention on the other side to receive, if there is a valuable consideration, will operate as an effective equitable assignment. *Fischer* v. *Klink*, 234 Iowa 884, 14 N.W. 2d 695.

The evidence in this case does not establish the intention to assign requisite to an equitable assignment under Iowa law. The original settlement agreement executed on November 2, 1960, provided that Central would dissolve Realty and transfer its assets to petitioner along with the remainder of the trust corpus. The supplemental agreement entered into on November 14, 1960, provided that Central would transfer the stock of Realty to petitioner and that petitioner would dissolve Realty. The court order disposing of the cases brought by Jo Ann approved this settlement agreement as amended. There is no evidence that the parties intended an assignment of the lease before the dissolution of Realty and the transfer of its assets to petitioner as

provided in the settlement agreement. In the absence of such evidence, the intention of the parties must be construed as expressed in the written agreement. We conclude therefore that the settlement agreement did not effect an equitable assignment of the lease under Iowa law.

Since Realty was the owner of the lease in November and December 1960, it is taxable on the rental payments made in those months by the YMCA to Jo Ann in the total amount of $400.

*Decision will be entered under Rule 50.*